DAVID ORR, Appellee, v. R. G. HART, Appellant.

No. 42559.

DECEMBER 11, 1934.

REHEARING DENIED MARCH 8, 1935.

Grimm, Elliott, Shuttleworth & Ingersoll and Putnam, Putnam, Langdon & Fillmore, for appellant.

Donnelly, Lynch, Anderson & Lynch, for appellee.

Evans, J.—There is much conflict in the evidence. In the statement of the facts for the purpose of considering the question of contributory negligence, we shall state them in the light most favorable to the plaintiff.

The plaintiff was an elderly man, 66 years of age. He was walking south on Fourth street and on the west side thereof. In the first instance he was intending to turn east along the north side of Second avenue when he should come to it. When he arrived, he observed that a switch engine with a string of cars was moving south on Fourth street and was moving across the pedestrian line of travel on the north side of Second avenue. The flagman was there with his signals. He put up his stop signal and sounded his whistle for the stoppage of all east-west vehicular traffic upon the intersection. This was done to protect the right of way to the use of the switch engine. Both parties to this action were familiar with the duties of the flagman in that regard. After the signal by the flagman, the plaintiff pursued his way on south along the west line of Fourth street as he had a right to do. At or about the same time the defendant, driving his automobile, approached the intersection from the east and driving along Second avenue. He was already barred by the flagman's signals from crossing the intersection. The switch engine and its string of cars occupied the middle railway track and was crossing the intersection from north to south. The defendant saw the engine and its cars. His line of travel westerly on Second avenue was already obstructed by the train. He interpreted the signals of the flagman as giving him consent to proceed. He "veered" to the south from his line of travel so as to cross the middle railway track on the left side of Second avenue. In so doing, he passed

within 6 or 8 feet in front of the moving engine. After crossing the middle railway track, he "veered" again to the north. He was driving from twenty-five to thirty miles an hour. In turning northward he moved in the direction of the plaintiff, who at the moment of the collision had arrived at a point near the middle of Second avenue. The front end of his car passed the plaintiff within a distance of about one foot. The door handle of his car caught the plaintiff and brushed him down.

The excuse, if any, for the plaintiff's failure to see the approaching car, is that he was looking westerly for cars from that direction. He was apparently protected by the switch engine and its cars, as against motor traffic from the east, and protected also by the further fact that he was near the center of Second avenue and that motor traffic from the east, if any, would normally pass such point on the north side. The excuse for defendant's failure to see the plaintiff is suggested indirectly. The argument for him is that he was in fact in his proper place upon Second avenue and that the plaintiff suddenly walked up against his automobile. It is not claimed that he passed on the north side of the plaintiff, nor that he passed on the north side of the avenue. Neither is it claimed that the plaintiff was running. The defendant's wife was riding with him. She testified that the front end of the automobile passed the plaintiff within a distance of about one foot. At the time of the accident, there was no other vehicular traffic upon the intersection except the switch train and the defendant's automobile. Nor was there any object to obscure the vision, except the shanty of the flagman.

The stress of appellant's argument is largely laid upon the proposition that the plaintiff was guilty of contributory negligence as a matter of law. At the close of the evidence defendant's motion for a directed verdict was presented to the court and was by the court overruled. Such contention is renewed here.

The defendant's approach to the question in his argument here puts the defendant in the passive attitude of occupancy of the street in proper manner, time, and place, and contends that the plaintiff actively collided with him by walking up to, and against, his automobile. The picture disclosed by the record is not so complacent as the defendant would put it. The defendant was moving at the rate of twenty-five or thirty miles an hour, according to testimony for the plaintiff. According to the testimony for the defendant, he

was moving at about half that rate. Either rate was far in excess of plaintiff's rate of motion. One second before the collision the defendant was 40 feet away. The plaintiff was in plain view. The defendant's wife saw him then. The defendant was "veering" from the southerly side toward the northerly side of the street. There was no reason apparent why the defendant should approach the plaintiff within a distance of one foot. The plaintiff was proceeding due south. The defendant had lost his course on the compass. He is described by the witnesses as "veering" to the south to get by the switch engine and "veering" back to the north,—doubtless to regain his proper position on the avenue. Observing what happened in the last 40 feet of his travel, was the movement of the plaintiff an aggression upon him? Or was he himself the aggressor? Upon this record we find it difficult to say that there is any evidence of contributory negligence on the plaintiff's part.

The defendant contends that plaintiff was negligent because he failed to look toward the intersection after he entered upon it. His evidence is that he looked just before he started across. He saw the switching train and the flagman and the shanty, nothing more. The course of the switch train was parallel to that of the plaintiff and operated as a protection to him. He had only 20 or 25 feet to go to reach the center of the street. He was at that time looking westerly. This was the only direction from which automobiles could properly come along the south half of the avenue. Upon the record we are clear that the defendant was not entitled to a directed verdict on the ground of contributory negligence.

II. The plaintiff testified that before starting across Second avenue he looked over the intersection and observed no one thereon except the flagman and the approaching train. He did not thereafter look in that direction. He gave as a reason for not doing so the fact that he was relying upon the stop signals of the flagman. Appellant assigns error and contends that the evidence was inadmissible. In support of his contention, he cites Allen v. Des Moines Railway, 218 Iowa 286, 253 N. W. 143. The cited case does not support the appellant. In the Allen case the motorman was the defendant's witness. He was asked this question: "Was there anything you could have done which would have stopped that car quicker than it was stopped at that time?" The plaintiff's objection to the question was sustained. We sustained the ruling here on the ground largely that the question comprehended the whole case and

was an invasion of the province of the jury. We have frequently held that, where the intent of a party is a material issue to be proved, it may be so proved by the testimony of the party himself.

III. The defendant presented to the court, and requested the giving, of thirteen prepared instructions. The court, on its own motion, prepared and gave twenty-four instructions. It refused the requested instructions. Error is assigned upon each refusal. Manifestly we cannot go into much detail in the consideration of all such instructions. We have examined all of them. Many of them could have been given without committing error; whereas some of them were of very doubtful propriety. The instructions given by the court on its own motion covered fully the salient features of the case. To give the additional instructions, as requested, would be repetitious, and would tend to bury the case in prolixity. For instance, requested instruction No. 1 was a definition of contributory negligence. It furnished no better definition than that given by the court. It had one serious fault rhetorically. It consisted wholly of one long sentence which occupied approximately one-half the printed page. The undue length militated against its clearness to the minds of the jury. The court in its discretion might well hesitate against submitting to the jury so complicated a definition, even though it were technically correct. Grammatically correct, yet it would require a parsing by the jury in order to be well understood.

Requested instruction No. 2 advised the jury that in instructing them in the measure of damages the judge was not intimating his own belief that the plaintiff was entitled to damage. This instruction, if given, might be regarded by the jury as an intimation that the real opinion of the court was against the plaintiff. We see little reason for giving such an instruction. To say the least, or the most, it was clearly within the discretion of the court to refuse it.

Requested instruction No. 3 advised the jury to disregard all evidence that had been stricken out. The record discloses no particular reason for the giving of such instruction.

Certain other requested instructions purport to charge the jury that the defendant had a right to assume that the plaintiff would do no negligent act contributing to his own injury. The refusal to give these requested instructions is challenged, and much argument is devoted thereto. It is true, of course, that each party had a right to assume that the other party would use ordinary care.

The instructions of the court did not purport to deal with that phase. We do not think the evidence in this case would justify the giving of such an instruction. True the defendant had a right to assume that the plaintiff would commit no negligence. The question of contributory negligence was necessarily settled by the verdict under proper instruction. The defendant had no right to complain of any act of the plaintiff unless it was contributory negligence. In driving as he did, the defendant was not induced or influenced in any degree by anything that was done by the plaintiff. The defendant did not see the plaintiff. He offered no explanation of his failure in that regard. The only explanation comes from the witnesses of the plaintiff. That explanation was that the defendant did not pursue a straight course across the intersection; that, in order to avoid the switch engine, he drove to the south and on the left side of Second avenue; that, after crossing the middle track occupied by the switch engine, he turned northward and approached the plaintiff from a southeasterly direction. Assuming that the defendant had a right to cross the intersection notwithstanding the stop signal, yet his rightful place would be along the north curb. If he had passed the plaintiff along his rightful course, he would have been on the north side of the plaintiff and not on the southeasterly side. While there is a dispute in the record as to just where the collision occurred, there is no dispute but that it was at least 13 feet south of the north curb, and no dispute but that the defendant approached the plaintiff from a southerly or southeasterly direction. It was the right side of his car that struck the plaintiff. What would it avail, therefore, but confusion, to instruct the jury that the defendant could assume that the plaintiff would commit no negligence? The defendant had the full benefit of the issue of contributory negligence, and the jury found there was none. If the requested instruction had been given, it could become effective only if the jury found in fact that there was contributory negligence.

IV. One of the contentions of the defendant was that the accident was "inevitable". He presented a requested instruction on that subject. The court refused it, and gave none of his own on the same subject. We do not think the subject had any pertinency to the case. The record shows conclusively that this accident happened through the fault and negligence of one or both of the parties hereto. The requested instruction advised the jury that it was permissible for them to find that the accident was inevitable and that

it happened without fault of either party. No evidence was introduced that tended to sustain such theory. The evidence for defendant was to the effect that it occurred through the fault of the plaintiff. The evidence for the plaintiff was to the effect that it occurred through the fault of the defendant. There was no other agency responsible for the result. If some other power had intervened over which neither party had any control, such as a broken wheel or an exploding engine, a different question would be presented. Upon this record it was not permissible to the jury to attribute the accident to any other agency.

 V. In instruction No. 10 the court instructed that the question of ordinary care is to be determined from all the facts and circumstances in the particular case and "may be in proportion to the character of the act to be done and the magnitude and extent of the injury that may result from want of proper prudence." Complaint is made of this instruction as announcing an incorrect rule of law. It impresses us as the fair equivalent of what we have often held,—that ordinary care is such care as is commensurate with the danger to be apprehended from the circumstances in which the actor is placed. While the language of this instruction is a little obscure, we think such is its fair purport. We cannot see in the instruction any possible prejudice to the defendant.

 VI. Appellant assigns error upon the admission in evidence of certain ordinances of the city of Cedar Rapids. The negligence charged in the petition consisted in part of the violation of certain alleged city ordinances. The record upon which this assignment is predicated, is as follows:

"Mr. Lynch: Plaintiff at this time produces bound volume entitled 'The Municipal Code, Cedar Rapids, Iowa, 1929,' and from this code offers in evidence Sections 314 and 316 found on page 61 of the Municipal Code.

"Mr. Langdon: Is that all of your offer?

"Mr. Lynch: Yes.

"Mr. Langdon: The defendant objects to the offer of the alleged Sections 314 and 316, for the following reasons:

" 'These sections of the said Municipal Code have not been properly identified, and no proper foundation has been laid for their admission; there is no showing that these alleged sections of the Municipal Code were duly passed by the city council of the city of Cedar Rapids, and no showing that even if said sections or

similar sections were ever passed that these alleged sections are true copies of the alleged ordinances passed by the city council. * * * '

"Mr. Lynch: Now, for the purpose of the record, we read into the record the ordinances which have just been offered and introduced in evidence.

"Mr. Langdon: We object to the reading, for all of the reasons urged in the objection to the offer itself.

"The Court: Same ruling.

"Defendant excepts.

"Counsel after reading the alleged sections, stated into the record: 'This volume from which these ordinances have just been read, is a volume published in book form and commonly used in this city as such.'

"The defendant objected to this statement of counsel and excepted to it for the reason that there was no proof in the record of the statement therein contained."

Section 5721 of the Code provides:

"When any city or town shall cause or has heretofore caused its ordinances to be published in book or pamphlet form, such book or pamphlet shall be received as evidence of the passage and legal publication of such ordinances, as of the dates mentioned or provided for therein, in all courts and places, without further proof. When the ordinances are so published, it shall not be necessary to publish them in the manner provided for in the preceding section."

The course pursued by the plaintiff was an attempt to conform to the provisions of the foregoing section. The plaintiff purported to produce the book of ordinances of the city of Cedar Rapids from which he read section 314 and section 316. These sections conferred power upon the flagman to control traffic at the intersections of street and railway. The objections of the appellant were directed specifically to the Ordinances 314 and 316, and not to the book of ordinances from which these sections were drawn. In his argument here, he puts his objections upon a somewhat broader base and includes therein the book of ordinances. We will consider the error from both points of view, but will devote our first attention to the specific objection first made.

The manifest purpose of section 5721 is to simplify the method of laying the foundation for introduction of ordinances in evidence.

We have held in substance that, upon the presentation of a book of ordinances in manner and form as described in said section, the book itself becomes presumptive evidence of what it purports to be. In Hollingsworth v. Hall, 214 Iowa 285, 242 N. W. 39, we said:

"It is the contention of the appellant that this ordinance is not properly before the court and that the trial court erroneously admitted it in evidence. There was *presented at the trial,* and identified as Exhibit 16, a book of ordinances of the city of Mt. Pleasant. The certificate thereto attached was introduced as a separate exhibit, and reads: * * * To this the plaintiff objected as 'incompetent, irrelevant and immaterial, in no way authenticated or proper showing of publication, as required by law.' There was also introduced as a separate exhibit Ordinance No. 59, which appears on pages 173 and 174 of said Exhibit 16, being the book of revised ordinances of Mt. Pleasant, Iowa, 1927. Objection was made to this exhibit on the ground that it was 'incompetent, irrelevant, immaterial, no showing of any proper publication or identification of that ordinance as required by statute.' " The contention of the defendant was overruled by the trial court, and the ruling was sustained here.

In the cited case the court quotes from Barrett v. C., M. & St. P. Ry. Co., 190 Iowa 509, 175 N. W. 950, 180 N. W. 670, as follows:

" 'The dates appearing, the ordinances are presumed to have been properly adopted and published, as exacted in the section preceding that quoted. Their inclusion in such a book is sufficient authentication, and therefrom it is to be presumed that they had been legally adopted. * * * ' The record as made presented prima facie proof of the ordinance. No proof to the contrary was introduced. The ordinance is properly in the case."

Though the defendant did not direct his objections specifically to the ordinance book, he did base his objections to the sections from the book on the ground that no proper foundation had been laid for them. He also objected to a statement of opposing counsel as to the nature and character of the book out of which the ordinances were read. It is now urged by the appellant in argument, that there was no *offer* of the book of ordinances into the evidence. The present argument is largely founded on that feature of the record. The record is that the plaintiff *"produced".* This naturally means that it was produced for the inspection of the court as a

foundation for the submission in evidence of sections 314 and 316. Was it essential to proper procedure that the plaintiff should have made a formal offer, in terms, of the volume? Counsel stated that he *produced* it and stated the purport thereof. If he had used the word "offered" instead of "produced" he would have quite forestalled the present complaint. The court below treated the production of the volume as a sufficient offer. In the Hollingsworth case, above cited, the language used by the proponent was that the volume "was presented at the trial". It is to be noted that it was neither offered, nor presented, nor produced upon any *issue in the pleadings*. The jury had no concern with it. The sole purpose of producing it was for the inspection of the court alone as a foundation for the introduction of the sections designated in the pleadings. The purpose and effect of section 5721, as we have construed it in the cited cases, is to constitute such a publication as presumptive evidence of what it purports to be. The statute recognizes that the possibility that such a volume could be spurious and fraudulent is infinitesimal and presents no call for burdensome precautions. We can see no valid reason why the presentation of such a volume for the inspection of the court should not be deemed a proper procedure under section 5721. In any event the sufficiency of the showing rested with the court alone. If the court were not satisfied with the showing, it could so rule.

We hold, therefore, that a presentation of the volume for the inspection of the opposing counsel and of the court was a sufficient compliance with the spirit and purpose of section 5721.

VII. At this point in the record another alleged error appears. The volume was not earmarked. No exhibit number was put upon it. It is argued, therefore, by the appellant, that this deficiency was fatal, and that for want of identification the volume could not be regarded as in the record at all. With the evident view of curing the deficiency rather than defending it, the appellee, after the trial and judgment and after the appeal was taken to this court, served upon the appellant a notice of a motion to correct the record. The correction sought was to put an identifying mark upon this volume. To this proceeding strenuous objection was made. Broadly stated, the contention of the appellant is that this was an attempt to add to the record rather than to correct it. The motion was heard before the court in vacation. The volume was produced at the hearing on the motion and identified by counsel for the appellee as the

same volume that he had presented at the trial of the case. He asked that it be properly identified. The court ordered that it be so identified as Exhibit 5. Such was the proceeding. From such order the appellant has prosecuted a second appeal. Both appeals are now submitted together upon a common record. The argument for appellant is that the volume was never in the record because of the fact that it was never *offered*. As already indicated, we think the production of the volume in the manner stated was a sufficient offer for the purposes to which the volume was relevant. There is no dispute as to the identity of the book. It was identified at the original trial by description. A complete record at the time of the trial would have included a marking of the Volume as an exhibit. If its marking was neglected or overlooked at that time, we see no valid reason why it may not be marked now as a correction or completion of the record. We think that the appellant's contention that it was a mere addition to the record rather than a correction thereof is not tenable. Any correction of the record implies some addition thereto or subtraction therefrom. The correction, as made, serves to bring before us. the record in the exact form of what actually occurred in the court below at the trial. We hold, therefore, that the ruling of the court was proper.

The foregoing comprises the principal points presented for our consideration by the appellant. The other points made have had our consideration, and we find no prejudicial error.

The judgment below is accordingly affirmed.

MITCHELL, C. J., and ALBERT, KINDIG, and DONEGAN, JJ., concur.