AVERY JAKEWAY, Appellee, v. JOHN H. ALLEN, Appellant.

No. 43804.

NOVEMBER 15, 1938.

G. C. Stuart and A. V. Hass, for appellee.

Hal W. Byers, J. W. Kridelbaugh, and McMartin, Herrick, Sloan & Langdon, for appellant.

HAMILTON, J.—The collision occurred about 4 p. m. on June 18, 1936, on highway No. 34 at a point approximately eleven miles east of Chariton, Iowa. The highway runs east and west and the pavement is eighteen feet wide with two black lines to mark the center. The plaintiff was riding his motorcycle along the road in an easterly direction and defendant was driving his Pontiac car in the opposite direction. They were approaching each other from opposite sides of what is referred to, in the record, as a hill, the west slope of which has a very gradual rise of about 22 feet in 1,100 feet while the east slope is considerably steeper having a rise of about 32 feet in 850 feet. The east 250 feet of the west slope of the elevation is almost level, the rise being only ninety-three hundredths of a foot in this 250 feet. It was on this 250 feet at the crest of the west slope that the collision took place. The testimony, as to the location of the two vehicles, is in hopeless conflict. According to plaintiff's version, he first saw the top of Allen's car when it was 200 feet east of him slightly to the south of the middle of the pavement. At that time, plaintiff's motorcycle was traveling some

three or four feet from the south edge of the pavement. Plaintiff immediately throttled his vehicle, by taking his foot off the gas, and gradually reduced the speed to about 40 miles an hour. When he reached a point 150 feet from Allen's car, he saw it was entirely over on the south side of the black lines in the center of the pavement coming west toward him, the course of defendant's car veering two or three degrees toward the south traveling slowly. Plaintiff, in order to avoid a collision, then turned his motorcycle to the left toward the center of the pavement with the idea of going to the north or wrong side of the Allen car. Both vehicles proceeded in this same general course until plaintiff had traveled another 100 feet or until they were within 25 feet of each other. Then suddenly, defendant turned his car abruptly to the right in a northwesterly direction right across the black lines; at the same time, plaintiff pulled to his right but not in time to avoid the collision. The front part of his machine struck the left rear fender and back bumper of defendant's car throwing plaintiff to the pavement. Plaintiff also testified that the left rear door of defendant's car was open and swung back and the handle bars of his motorcycle struck against this door and this turned his front wheel into the car fender. He says his motorcycle was never north of the center black lines. Two witnesses for plaintiff testified to circumstances and observations which tend to corroborate plaintiff's story. Plaintiff did not sound his horn as he approached the top of the hill.

On the other hand, defendant, who lived north of this highway a few rods east of the scene of the accident and who was on this day putting up hay from a field on the north side of the road west of his house and hauling the hay out of this field down the pavement to his home, was driving his car from home to the field where the hired man and defendant's 15-year-old grandson had already gone with the team and rack. He testified positively that his car was never south of the center lines; that he turned out of the lane onto the north half of the pavement and proceeded west about 15 or 20 miles an hour to the right of the center and stayed there until he got within 25 or 30 feet of the motorcycle, at which point, it turned its course directly toward his car; that he then pulled right to the northwest intending to get over on the north shoulder out of the way; that at the moment he was struck he had succeeded in getting

the front wheels of his car out on the north shoulder. He also testified the door was not open, but, on the contrary, it was closed and locked; that sometime prior to the collision he had driven his car into the garage with this left rear car door open and torn it loose and when it was opened it would fall out and because of this condition it was always kept closed and locked. The grandson, who saw the collision from the hay wagon, corroborates Allen on both of these propositions and two disinterested witnesses, one of whom was the deputy sheriff of Lucas county, testified to physical facts and circumstances strongly corroborating Allen's story. Seldom have I, the writer of this opinion, in thirty-five years' experience come upon a case where the stories were so contradictory. We have not attempted to give in detail all the facts but the foregoing gives us the setting for the discussion of the legal questions involved.

The defendant requested several instructions embodying what he contends was the law governing under the facts and issues of this case to the effect that it is the duty of persons operating motor vehicles on meeting each other upon the public highway to yield one half of the traveled portion thereof by turning to the right; that persons operating motor vehicles upon the public highway shall have the same under control; that no person shall drive any vehicle upon the highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead; that persons operating motor vehicles upon the highway shall drive the same at a careful and prudent speed not greater nor less than is reasonable and proper having due regard to the traffic, surface and width of the highway and of any other conditions then existing; that an adequate signaling device shall, in all cases, be sounded on approaching tops of hills in the country where the operator's view is obstructed; that persons operating motor vehicles upon the highway shall exercise ordinary care to keep a reasonable and proper lookout. To each of the requested instructions was added the following: "and the defendant had a right to assume that the plaintiff would obey this law until the defendant knew or in the exercise of ordinary care he should have known otherwise." Appellant now complains and assigns as error the failure of the court to give the requested instructions and especially in failing to embody in the court's instructions the assumption clause above quoted. After giving this matter our

careful consideration, we are of the opinion that the court's instructions do not sufficiently cover the law applicable to the issues in this case.

By instruction No. 7, the court submitted three grounds of negligence charged in plaintiff's petition for the jury's consideration as follows:

"(a)   That the defendant was negligent in operating his car on the left hand side of the highway at a time when he was meeting the motorcycle of the plaintiff, and in failing to turn to the right and yield one half of the traveled portion of the highway.

"(b)   That the defendant drove his automobile at and prior to the time and place of the collision on the left hand side of the paved highway with the left rear door of his said automobile open.

"(c)   That the defendant while operating his said automobile with the left rear door open thereon failed to yield to the plaintiff one half of the traveled portion of the highway."; and stated in connection therewith, in substance, that plaintiff could not recover unless he had established by the greater weight or preponderance of the evidence one or more of the above stated grounds of negligence. The only rule of law given by the court in connection with the alleged grounds of negligence is contained in instruction No. 11 as follows:

"The statutes of Iowa provide in substance that when motor vehicles meeting each other on the public highway each shall give one-half of the traveled track by turning to the right, and a failure to comply with such statute constitutes prima facie evidence of negligence."

The specific complaint lodged against the court's submission of the plaintiff's alleged grounds of negligence to the jury being as follows:

"It is error to submit to the jury as issues separate allegations of negligence and to fail thereafter to instruct the jury with reference thereto, and thus to permit the jury to find the defendant negligent in one or more of such particulars, without guide or direction relative thereto."

It will be noticed that the court simply stated the substance of Code section 5020 and did not tell the jury that this

law was applicable to any of the specific charges of negligence submitted or what acts or failure to act would constitute negligence under any one of the three specifications submitted. This was held to be reversible error in the case of Muirhead v. Challis, 213 Iowa 1108, 240 N. W. 912, wherein this court said [page 1114 of 213 Iowa, page 915 of 240 N. W.]:

"Again, as hereinbefore stated, the court submitted to the jury, in Instruction Number One, the first two grounds of negligence hereinbefore quoted. In no instruction did the Court specifically define to the jury what acts would constitute negligence under said allegations. While it is true that the Court, in a subsequent instruction, told the jury of the "law of the road" as contained in section 5020, Code 1927, and that it is the duty of each driver of an automobile to observe these regulations, and that a failure to so do would be presumptive evidence of negligence on the part of the driver so failing, and that said presumption is not conclusive, but may be overcome or rebutted by other facts and circumstances shown in evidence and tending to show that such driver was never the less not in fact negligent, yet the Court did not tell the jury that such instruction concerning the 'law of the road' related to the first two charges of negligence submitted in Instruction Number One. Because of this manner of submission, the jury were permitted to speculate and conjecture as to what applicability they should give to the 'law of the road' as set out in said instruction in determining the charges of negligence submitted in Instruction Number One. This is especially true as to the second charge of negligence hereinbefore quoted. The complaint of appellant in this respect is meritorious."

So in the instant case, no rule of law is given in the court's instructions to guide the jury in reference to specifications of negligence "b" and "c". Specification "b" charges the defendant with negligence for driving his automobile at and prior to the time and place of the collision on the left-hand side of the paved highway with the left rear door of his said automobile open. Specification "c" is stated a little differently but also contains the element of the rear door being open. The jury was left to supply by speculation and conjecture the rule of law applicable to specifications "b" and "c".

Nowhere in the court's instructions was the jury told

that the defendant had a right to assume that the plaintiff would obey the "law of the road" as given to the jury by the court until in the exercise of reasonable care he should have known otherwise. While we would not require the court to affix this assumption clause to each separate statement of the law governing the case, we think the defendant was entitled to have the idea embodied in a general instruction. We have often voiced our approval of this rule of law that where vehicles are approaching each other on a highway they each have a right to assume that the other will keep to the right and drive upon his own right half of the highway until in the exercise of ordinary care it becomes apparent to him that this assumption can no longer be indulged. See Pazen v. Des Moines Trans. Co., 223 Iowa 23, 272 N. W. 126, and the same assumption is true of other provisions of the statute relating to the duties of those operating motor vehicles upon the highway. We said in Carlson v. Meusberger, 200 Iowa 65, at page 78, 204 N. W. 432, at page 438:

"Each of the parties had a right to assume, at least in the absence of anything that, in the exercise of reasonable caution, he was required to know to the contrary, that the other would obey the law. * * * "

See, also, Orth v. Gregg, 217 Iowa 516, at page 519, 250 N. W. 113; Rogers v. Jefferson, 224 Iowa 324, 275 N. W. 874.

Of course, it would be true, if the accident happened as the plaintiff says it did, that while both vehicles were over on the south half there would be no basis for any assumption on the part of the defendant because, under plaintiff's evidence, he was at all times south of the black lines in the center of the pavement and there was nothing for him to yield. The yielding would all be on the part of the defendant. So long as there was still time for the defendant to safely turn over on to his half, he might have indulged the assumption that the plaintiff would not change his course and attempt to go around him on the wrong side. The jury could have found that had the plaintiff stayed over near the shoulder instead of turning toward the center that there would have been no collision. However, there was not time for any deliberation. Perhaps less than five seconds elapsed from the time these parties saw each other until the collision occurred. With both of them on the same side of

the road, 200 feet apart, with the plaintiff's vehicle traveling at 45 or 50 miles an hour and defendant's car at 15 or 20 miles an hour, they each faced an emergency. In the defendant's case, if he was on the south half of the pavement, the emergency was of his own making and availed him nothing while plaintiff, still on his own side, faced the same emergency which was not of his own making and this situation was properly covered by the court's instruction No. 19, as follows:

"In this case it is the claim of the plaintiff that the defendant was driving his car on the south or left hand side of the road as he was approaching and meeting the plaintiff, and that the plaintiff attempted to avoid a collision by turning the course of his motorcycle first to the left toward the north side of the highway, and then to the right toward the south side of the highway.

"You are, therefore, instructed that if you find from the preponderance of the evidence that the defendant was driving upon and obstructing the south half of the highway in approaching and meeting the plaintiff so as to make it probable that a collision would occur, the plaintiff had the right to use such means for avoiding the danger as would appear proper to a person of ordinary caution and prudence in a like situation.

"And if you find from the evidence that the plaintiff while seeking to avoid such collision acted with the care and prudence that an ordinarily careful and prudent man would have acted under like circumstances, then the plaintiff would not be guilty of contributory negligence in so turning his motorcycle just prior to the collision.

"But on the other hand, if the plaintiff did not, in seeking to avoid the danger of a collision, use such means for avoiding the danger as would appear proper to a person of ordinary prudence in a like situation, then the plaintiff would be guilty of contributory negligence and cannot recover in this action."

■ From the defendant's standpoint, if as he says he was always over on his own right side, he needed no emergency or other excuse to justify being at all times where he had a right to be. He did not drive into the plaintiff's vehicle; the plaintiff's vehicle struck the defendant's car. We think there was no occasion for the court giving an instruction to the effect that the defendant was faced with an emergency.

The contentions of the defendant and the law relating thereto are set out in the court's instruction No. 20, as follows:

"Defendant claims that the plaintiff was guilty of contributory negligence in the following particulars:

"(a) That he failed to operate his motorcycle at a speed which would permit him to bring it to a stop within the assured clear distance ahead.

"(b) That he failed to have his motorcycle under control.

"(c) That he failed to exercise ordinary care to keep a proper lookout.

"(d) That he failed to yield to the defendant one-half of the traveled way by turning to the right.

"(e) That he failed to operate his motorcycle at a careful and prudent rate of speed.

"(f) That in approaching the top of a hill where his view was obstructed he failed to sound an adequate signaling device.

"In this connection you are instructed the law requires a person operating a motor vehicle or motorcycle upon the public highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law.

"The statutes also require that an adequate signaling device shall on all occasions be sounded upon approaching the tops of hills in the country where the operator's view is obscured.

"A violation of any of these provisions of the law constitutes negligence, and if the plaintiff violated any of said provisions of the law at and just prior to the collision involved in this suit he would be guilty of negligence, and if the plaintiff was negligent in any of these respects or in any other respects, and his said negligence contributed in any way or in any degree directly in producing the injury complained of, then the plaintiff would be guilty of contributory negligence, and cannot recover in this action. But the fact, if it be a fact, that the

plaintiff was guilty of negligence will not bar him from recovery in this action, unless his said negligence contributed directly in some manner or degree in producing the injury complained of.''

Complaint is also made of the failure·of the court to fully instruct with reference to the grounds of contributory negligence charged against the plaintiff, which are narrated in instruction No. 20 and numbered ''a'' to ''f'', inclusive, in that the court did nothing more than quote the statute and stated that a violation of any of said provisions of law by the plaintiff would be contributory negligence and bar his recovery and that as to some of the grounds thus listed the court failed to give the jury any rule of law covering the same. We are also inclined to the view that there is merit in appellant's contention as to this instruction. The court did not in his instructions give the jury any law governing specifications ''b'' and ''c'' relating to the matter of keeping a proper lookout and of having his motorcycle under control. While the evidence bearing upon these two points is rather meager, yet, the defendant testified, and in this he was corroborated by his grandson, that, when plaintiff was within about 25 or 30 feet of the defendant's car, the plaintiff made a straight line in the direction of the defendant's car and drove across the black lines right into the side of the defendant's car at a time when defendant's car was over on the north half of the pavement; that defendant tried to avoid the collision by turning his car to the right out onto the shoulder but was driving at such a slow rate of speed that he could not get out of his way. The jury, evidently, did not accept defendant's version of the facts. Nevertheless, from this testimony and other circumstances such as the description of the black lines indicating where the motorcycle had skidded and the location of the broken glass which was over on the north half of the paving, the jury could have found that the plaintiff was not keeping a proper lookout as to where he was going or that he did not have his vehicle under control and, hence, the court should have submitted these matters under proper instructions to the jury for their determination. Especially was this necessary since the court by instruction No. 20 set out these grounds of negligence, along with others which defendant alleged constituted the proximate cause of the injury. The jury should not have been left

to conjecture and speculation in formulating their own legal standard for measuring the duties owing to the defendant by plaintiff as to the grounds of negligence submitted to the jury for their consideration.

It has always been considered good practice for the court not only to state the law but also to make application of the rule of law stated and not to merely state that a violation of the law would constitute negligence. The appellee attempts to avoid a reversal by making the ingenious argument that the jury was required to find, before they could bring in a verdict for the plaintiff, that the defendant was over on the south half of the pavement, and that there was no evidence that the defendant was over on that side because of any conduct on the part of the plaintiff and, therefore, defendant is not prejudiced because of the errors allegedly committed by the court. We think this was sufficiently and convincingly answered by appellant in his reply argument by the following statement: "What the jury found is immaterial so far as this question is concerned, unless it can be said *as a matter of law* that the jury could not have reached any other result." Appellee relies upon the case of Orr v. Hart, 219 Iowa 408, 258 N. W. 84. This was not a case involving a collision between two vehicles but was a case where a pedestrian was run down at a street crossing and there is little similarity in the facts in that case and the one at bar. In the Orr case, neither party saw the other and there were no statutory laws of the road applicable to the plaintiff who was a pedestrian. Cases more nearly in point are Fry v. Smith, 217 Iowa 1295, 253 N. W. 147; Hoover v. Haggard, 219 Iowa 1232, 260 N. W. 540; Corning v. Maynard, 179 Iowa 1065, 162 N. W. 564.

Complaint is further made, with reference to the court's instruction No. 21 relating to damages for future pain and suffering, in that the court failed to limit this right of recovery for such future pain and suffering as appeared from the evidence to be reasonably certain. Trial court in comment on this instruction at the time he overruled motion for new trial stated that there might be some doubt as to this instruction but he was of the opinion that there was no prejudice. No doubt, this will be guarded against at any future trial and no further comment or discussion is necessary. This is also true with reference to the admission of certain testimony. We think the trial court

was unduly technical in his ruling in view of the fact that the previous answer to the same question had been stricken and the next question, the answer to which the court permitted to stand because the objection was not repeated, was not, in fact, a new question but the old question read by the reporter.

We realize that it is a very difficult matter for a trial court to properly submit a case of this character where the evidence of the contending parties is so contradictory. However, the weight of the evidence is for the jury and the duty of the court under our system is to carefully instruct the jury so as to furnish them a guide insofar as possible in attempting to arrive at the truth. We might hesitate to reverse this case on some of the matters assigned as error and discussed herein if standing alone but taken all together we believe the ends of justice will be more nearly served by granting a reversal of this case and by having the issues more fully and carefully presented to the jury.

The case is accordingly reversed.—Reversed.

SAGER, C. J., and DONEGAN, STIGER, and ANDERSON, JJ., concur.

MITCHELL J., dissents.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority and therefore respectfully dissent.

The first error complained of is that the court failed to give certain requested instructions, and especially in failing to embody in the court's instructions the following assumption clause:

" * * * and the defendant had a right to assume that the plaintiff would obey this law until the defendant knew or in the exercise of ordinary care he should have known otherwise."

It was the contention of the defendant, and he and all of his witnesses testified, that at no time was his car on the wrong side of the road. So before the jury could possibly have found for the plaintiff it had to find that the defendant was on the wrong side of the road. If the accident was due, as it must have been, according to the verdict of the jury, to the fact that the defendant was on the wrong side of the road, the assumption that the plaintiff would obey the law would not in any way, as I see it, have influenced the jury in arriving at the verdict it did reach, and the failure to embody this clause in the instruction

could not in any possible manner have affected the verdict of the jury. The failure to give it was certainly without any prejudice to the defendant.

In the case of Orr v. Hart, 219 Iowa 408, 258 N. W. 84, we have a very similar proposition. This court, speaking thru the late Justice Evans, said, at page 414, 258 N. W. at page 88:

"What would it avail, therefore, but confusion, to instruct the jury that the defendant could assume that the plaintiff would commit no negligence? The defendant had the full benefit of the issue of contributory negligence, and the jury found there was none. If the requested instruction (that the defendant had a right to assume the plaintiff would do no negligent act, contributing to his own injury) had been given, it could become effective only if the jury found in fact that there was contributory negligence."

So in the case at bar, there was no prejudice in the failure of the court to give this requested instruction, because the jury found by its verdict that the facts claimed to justify the giving of this instruction did not exist. Hence the giving of this instruction could not have changed the jury's finding in this respect.

I cannot agree with the interpretation placed upon instruction No. 7 in the majority opinion. Each of plaintiff's allegations of negligence required a finding that the defendant was on the wrong side of the road. The jury was specifically told to disregard all other acts which might appear to them to constitute negligence. In instruction No. 10 the court defined negligence for the jury. Instruction No. 11 set forth substantially the meeting and passing statute, and told the jury that a failure to comply with the same was prima facie evidence of negligence. The jury found that the defendant did not exercise ordinary care because he was on the wrong side of the road. The majority rely upon the case of Muirhead v. Challis, 213 Iowa 1108, 240 N. W. 912. It seems to me that case is not in point, for it contained six different specifications of negligence, some of which were not related in any manner to the meeting and passing statute. In the case at bar all of the specifications concern the meeting and passing statute and its violations. Under the evidence the jury was fully instructed as to the rules governing defendant's conduct, and the statutory duty that he owed in

meeting other vehicles. Under the allegations of the petition the jury was not permitted any field of speculation because it was required to find that the defendant was negligent because he was on the wrong side of the road, before finding for the plaintiff.

The majority conclude with this statement:

"We might hesitate to reverse this case on some of the matters assigned as error and discussed herein if standing alone but taken all together we believe the ends of justice will be more nearly served by granting a reversal of this case, and by having the issues more fully and carefully presented to the jury."

Again I am in disagreement. This case is clearly one for the jury; even the majority in their opinion so admit. There was a conflict—a severe conflict—in the evidence. The case was submitted to the jury and the jury found for the plaintiff. In my judgment the reversal is based upon too technical a construction of the instructions. The late Justice Weaver expressed it far better than I am able to do, when he said in the case of Elliott v. Capital City State Bank, 149 Iowa 309, 319, 320, 128 N. W. 369, 372:

"We think it must be said that no set of instructions ever yet framed by a trial Court could stand the test of an appeal if the severely critical and technical tests for which appellant contends were to be adopted and enforced by us. Instructions are of necessity prepared under more or less pressure to avoid interference with the progress of the business of the term. They are addressed to jurors unskilled in law, and unversed in legal phraseology. * * * The standards by which instructions are to be judged are not those which might properly be applied to a technical treatise prepared for the use of the profession."

I would affirm the lower court's decision.