OLLIE TOBIN, appellee, v. JAY WILLIAM VAN ORSDOL et al., appellants.

No. 47764.

(Reported in 45 N.W.2d 239)

DECEMBER 12, 1950.

John D. Randall and Richard F. Nazette, both of Cedar Rapids, for appellants.

Otto L. Schluter and Adam A. Kreuter, both of Cedar Rapids, for appellee.

MULRONEY, J.—Much of defendants' brief is devoted to an argument that plaintiff was guilty of contributory negligence as a matter of law. We shall state the facts in the light most favorable to plaintiff.

Plaintiff, Ollie Tobin, who is fifty-eight years old, was a packing house employee in Cedar Rapids. On July 29, 1948, he got off work about noon and walked to a barbershop located on the east side of Third Street and about one hundred feet south of Eighth Avenue. He stayed in the barbershop about fifteen minutes talking to friends and then walked directly across Third Street to a gasoline filling station to buy some cigarettes. He bought the cigarettes and started back to the barbershop. Before leaving the curb in front of the filling station he looked to his left at the traffic light signal at the Eighth Avenue intersection, about a hundred feet north. This signal was an overhead signal in the center of the intersection, with red, green, and amber lights. He saw that this signal was red—on the south side—and that there was no traffic south of the intersection. He started across the street east and when he had taken four or five steps from the curb he was hit by the taxicab driven by the defendant, Van Orsdol. The taxicab came from the north and three witnesses testified it ran through the red light at the intersection and there was evidence that the cab was traveling forty to forty-five miles an hour as it went through the intersection. The impact caused a dent in the right front fender and hood of the cab. Plaintiff recovered a judgment against Van Orsdol and his employer, Marvin Hart, and defendants appeal.

I. The plaintiff had equal rights with a motorist when crossing the highway at the place he started across. Whitman v. Pilmer, 214 Iowa 461, 239 N.W. 686. The driver of the taxi and the plaintiff were each under a duty to exercise reasonable care. Lawson v. Fordyce, 237 Iowa 28, 21 N.W.2d 69; section 321.329, Code, 1950.

II. Defendants' argument that the record shows plaintiff guilty of contributory negligence is based largely on disputed testimony. Defendants point to evidence that would show the attempted crossing was one hundred sixty-two feet south of the intersection. The point is not very material. Admittedly he was not at a crosswalk. There was some evidence that there were two parked cars at the curbing in front of the filling station and that plaintiff stepped out in front of one of these cars. Plaintiff did not remember any parked cars but said if there were they would not interfere with his view of the traffic signal or traffic from the north. Defendants argue this is a "darting" case—where a pedestrian darts out between parked cars into the path of a motorist. They point to the evidence of the taxi driver that plaintiff jumped out from in front of a parked car directly into his path. This evidence is disputed by plaintiff's testimony that he "made four or five steps in the street * * * it was just ordinary walking", and by the evidence of the lady who sold plaintiff the cigarettes: "I observed him walk away from the station for a short way. He was walking at normal speed. I didn't observe him cross the street."

III. Defendants argue plaintiff's own testimony convicts him of contributory negligence. On direct examination he testified as to his glance north when he was on the curb when he saw the traffic light which was red for north-south traffic. On cross-examination he said he could see north for a distance of a block and a half or two blocks and that he saw no car approaching from the north; that he took a second look north after he had taken two steps from the curb and again saw no car from the north. On redirect examination he said this second look was just an instant before he was hit. Defendants argue the foregoing shows that plaintiff did not look north for if he had he would have seen the cab, since he could see two blocks north; and this proves he was guilty of contributory negligence as a matter of law within the rule of cases like Sheridan v. Limbrecht, 205 Iowa 573, 218 N.W. 278, and Jarvis v. Stone, 216 Iowa 27, 247 N.W. 393. The rule of those cases is that the pedestrian will not be heard to say he looked and saw no car when under all of the circumstances by looking he could not have failed to see the car in close proximity to him. But that is not this case.

The fair import of his testimony is that on his first look north his glance went no farther that the traffic light some hundred feet away. He said this was "red" that he "noticed it carefully." We would not hold plaintiff guilty of contributory negligence as a matter of law because he did not look farther north than the traffic signal. We have held pedestrians on the highway have a right to rely on "every other traveler's compliance with the statutes and the laws of the road." Lawson v. Fordyce, 237 Iowa 28, 51, 21 N.W.2d 69, 82. "Neither pedestrian nor auto driver is called upon to anticipate negligence on the part of the other." Smith v. Spirek, 196 Iowa 1328, at 1333, 195 N.W. 736, 739. The case is much like Orr v. Hart, 219 Iowa 408, 258 N.W. 84, where the southbound pedestrian, in looking east before starting to cross a street, noticed he was protected from westbound traffic by a flagman and an approaching train from the south. When struck by a car from the east that crossed ahead of the train, we held the plaintiff was not guilty of contributory negligence as a matter of law because he failed to see the motorist.

In Orth v. Gregg, 217 Iowa 516, 519, 250 N.W. 113, 114, where the plaintiff-pedestrian was struck by a car as he crossed a street between intersections, we said:

"Plaintiff was bound to use reasonable care under all the surrounding circumstances for his own safety. Plaintiff's right to assume that defendant [motorist] would obey the law is an important consideration in determining what reasonable care required him to do for his own safety. Roe v. Kurtz, 203 Iowa 906, 210 N.W. 550; Hanson v. Manning, 213 Iowa 625, 239 N.W. 793. What constitutes such care is usually a jury question."

IV. The record is uncertain as to just when, in the course of his travel across the street, plaintiff took this second look north. And the entire record of his testimony leaves one with the impression that plaintiff was uncertain as to the exact number of steps he took from the curb before he took this second look to the north. This is not surprising. The trial was about a year and four months after the accident. The plaintiff is a man with an eighth-grade education. True, he testified on cross-examination that he looked north the second time after he had

left the curb. One place in his testimony he said he had taken one or two steps into the street. Defendants fasten on this portion of his testimony and place it alongside his testimony on direct examination, that he was hit after four or five steps from the curb, and say it shows he took two or three steps east after his last look north before he was hit. But when the cross-examiner in his question suggested that he took two or three more steps after his second glance the plaintiff replied: "No, after that I was struck." And in redirect examination he said his second look north was "just an instant before I was hit." Such inconsistency as there might be in plaintiff's testimony was for the jury to decide. Switzer v. Baker, 178 Iowa 1063, 160 N.W. 372; Margeson v. Town Taxi, Inc., 266 Mass. 192, 165 N.E. 20; 58 Am. Jur., Witnesses, section 863.

█ V. Defendants argue the trial court erred in various rulings with respect to the evidence of the speed of the taxicab and the evidence tending to show the cab went through the red light.

One Raymond McArthur, who was driving east on Eighth Avenue, testified the signal facing him was on "Go" when he had to stop to let the taxicab from the north go through the intersection; that this cab was going "at a high rate of speed"; and that this taxicab went through the intersection when the light was red against it. He said the taxicab was traveling forty to forty-five miles an hour as it crossed in front of him. His wife, who was riding with him, also said the cab went through the intersection when the light was red against it.

Another witness, Ira Moore, testified he was driving south on Third Street and the cab passed him about a half a block north of the Eighth Avenue intersection. He said he was driving about twenty-five miles an hour and the cab "was going about twice as fast * * * might have been going about fifty miles an hour." He too said the cab went right through the red light and that he then heard a dull thud. He said: "I could hear it in the car with the windows down." He observed the cab stop after he heard the thud and saw plaintiff lying in the street in front of the cab.

We think the evidence of speed was rightly admitted. The admissibility of such evidence of speed prior to the time of the

accident rests largely within the discretion of the trial court. 9 Blashfield Cyclopedia of Automobile Law and Practice, section 6235. In Waldman v. Sanders Motor Co., 214 Iowa 1139, 1143, 243 N.W. 555, 557, we said: "It is difficult to draw any exact line and say at what distance from the place of an accident the speed of an automobile becomes too remote that proof thereof is improper."

There we held evidence of speed five hundred forty feet from the accident was properly admitted.

■ VI. The evidence that the cab went through the red light was clearly admissible. There is no merit in the argument that what occurred at the intersection one hundred or even one hundred and sixty feet, as defendants contend, from the point of the collision, was immaterial. It was evidence of the cab driver's negligence and could reasonably be found to be a proximate cause of the injury. It is not true, as defendants seem to contend, that only those who cross at crosswalks can rely on traffic signals. All lawful users of the highway are entitled to rely on obedience to traffic signals, just as they are entitled to rely on obedience to other laws of the road.

■ VII. Two special interrogatories were submitted to the jury. These interrogatories and their answers were as follows:

"Do you find that the vehicle driven by the defendant, Jay William Van Orsdol, was within the range of vision of the plaintiff, Ollie Tobin, at the time that the plaintiff, Ollie Tobin, looked to the North when he was at the West curbing of Third Street? ANSWER: YES. Do you find that the vehicle driven by the defendant, Jay William Van Orsdol, was within the range of vision of the plaintiff, Ollie Tobin, at the time the plaintiff, Ollie Tobin, made his observation to the North after he had taken two steps East of the West curbing on Third Street? ANSWER: No."

Defendants argue there is a fatal inconsistency in these two answers entitling them to have the general verdict set aside and a new trial. Mere inconsistency between the special findings is not ordinarily fatal to the general verdict. Rule 206, Rules of Civil Procedure, provides: "If the answers [to special inter-

rogatories] are inconsistent with each other, and any is inconsistent with the verdict, the court shall not order judgment, but either send the jury back or order a new trial."

In Fishbaugh v. Spunaugle, 118 Iowa 337, 343, 92 N.W. 58, 60, we said, speaking of the answers to special interrogatories: "* * * the most which can be said is that the special findings are inconsistent with each other, and such inconsistency is not fatal to the general verdict."

See also Bills v. City of Ottumwa, 35 Iowa 107; 64 C.J., Trial, section 964. In Stanbery v. Johnson, 218 Iowa 160, 254 N.W. 303, cited by defendants, the general verdict was clearly inconsistent with a special finding.

It is only when there is an irreconcilable conflict between the general verdict and the special finding that the latter controls. In Fischer v. Hawkeye Stages, 240 Iowa 1203, 1206, 37 N.W.2d 284, 287, many of our former opinions are reviewed and the opinion states this as the rule:

"It is settled both in Iowa and by the authorities generally that all reasonable presumptions are in favor of the general verdict. Nothing is presumed in aid of the special finding. If the general verdict thus aided is not in irreconcilable conflict with the special finding the former must stand."

Our first reaction is that these interrogatories should not have been submitted. Special interrogatories should involve a question which, answered affirmatively or negatively, would be determinative of some ultimate fact involved in the right to recover. Ipsen v. Ruess, 241 Iowa 730, 41 N.W.2d 658, and cases there cited. Whether defendant's cab was within the range of plaintiff's vision or not when he was on the curb is not decisive on the question of whether he used reasonable care for his own safety. As previously pointed out, if the cab was north of the red light the jury could find he was not guilty of contributory negligence because he did not look beyond the red light and discover the cab. Plaintiff testified he could see north on Third Street for a distance of two blocks. That was his range of vision or the outer boundary of the scene that was before his eyes as he looked north. Each individual juror in answering such a question merely placed the cab on Third Street—and not neces-

sarily the same place found by other jurors—within a distance of two blocks from where plaintiff stood. The answer was decisive of nothing.

The second interrogatory was particularly improper. It assumes that defendant took exactly two steps from the curb and glanced north the second time. As we read all plaintiff's testimony we are in doubt as to how many steps he had taken from the curb before his second glance north. It is true, as previously stated, that in one part of his testimony he said he glanced north the second time after one or two steps from the curb. He also said he was hit after four or five steps from the curb. He also said he was hit the instant after his second look. By placing the second look the instant before he was hit—and plaintiff was very firm on this point—the record of testimony on the number of steps from the curb before the second look varied from one to five steps. An interrogatory cannot assume certain facts that the record leaves uncertain. Scagel v. Chicago, M. & St. P. Ry. Co., 83 Iowa 380, 49 N.W. 990; 64 C.J., Trial, section 944.

But even assuming the interrogatories were proper, we find no irreconcilable conflict between either special finding and the general verdict. It is obvious, as we have pointed out, that there is no conflict between the general verdict and the first special finding. The second special finding that the car was not in the plaintiff's range of vision at the time of the second look is not helpful to defendants. The jury was warranted in finding this second look was just an instant before plaintiff was hit. He testified he did not know what hit him. The jury could construe this question as meaning whether plaintiff looked in time to see the cab bearing down on him, and their answer could be that the second look was too late to place the cab in his range of vision. Such a finding would be warranted by the evidence.

Finding no error the judgment is affirmed.—Affirmed.

All JUSTICES concur.