29 So.2d 289

**UTILITY TRAILER WORKS v. PHILLIPS.**

3 Div. 454.

Supreme Court of Alabama.

Nov. 21, 1946.

Rehearing Denied March 13, 1947.

Rushton, Stakely & Johnston, of Montgomery, for appellant.

Jack Crenshaw, of Montgomery, for appellee.

**LAWSON, Justice.**

This is a suit by Eugene B. Phillips against Utility Trailer Works, a corporation, to recover damages for personal injuries sustained as a result of a collision of a motorcycle, on which Phillips was riding as a passenger, and a truck owned and operated by the defendant corporation.

Insofar as the pleadings are concerned, the case was submitted to the jury upon two counts of the complaint charging simple negligence and defendant's plea of the general issue in short by consent in the usual form.

There were verdict and judgment for plaintiff. Defendant filed motion for new trial, which was overruled, and has appealed to this court from the final judgment, and from the judgment of the trial court upon the motion for a new trial.

The collision occurred in the late afternoon of the 12th day of June, 1945, on Bell Street, in the City of Montgomery, at a point approximately 580 feet east of the intersection of Bell and Holt Streets. Bell Street runs approximately east and west and is the main thoroughfare between the City of Montgomery and Maxwell Field, an Army post situated a few miles west of the City of Montgomery. Bell Street is also a part of the Montgomery-Birmingham Highway. At the time of the collision the weather was clear, the pavement was dry and visibility was good.

Plaintiff was a soldier stationed at Maxwell Field. He was riding as a passenger on a motorcycle driven by another soldier, Francis X. Hayes. The motorcycle was constructed so as to accommodate two people, with separate footrests and handles for the passenger. There was only one seat, but it was built to carry two people and the plaintiff was occupying the rear portion of this seat, immediately behind the driver. The type of seat on the motorcycle was de-scribed as a "buddy seat" and the manner in which these two soldiers were riding was referred to in the testimony as "buddy fashion." The motorcycle was owned by one Henry W. Waas, but was at the disposal of Hayes.

The plaintiff and Hayes were roommates and on this occasion Hayes was enroute to Montgomery to "see some people" and Phillips, who was riding with him, was going to remain in the city. After leaving Maxwell Field the motorcycle proceeded east on Bell Street in the direction of the City of Montgomery. Just prior to reaching the intersection of Bell and Holt Streets, Hayes reduced the speed of the motorcycle and then continued across the intersection.

The evidence for the plaintiff and the defendant as to the movement and speed of the two vehicles just prior to the collision is in conflict in some material respects.

There is evidence for the plaintiff which tends to show that immediately after crossing the above-mentioned street intersection, the driver of the motorcycle had a clear vision from that point to a point a block or a block and a half past the scene of the accident, and there was no traffic ahead on the motorcycle driver's right-hand side of the street (south side of Bell Street); that Hayes saw defendant's truck stopped by a ramp on the south side of the street; that after passing the intersection, the motorcycle travelled at a rate of speed between twenty-five and thirty-five miles an hour on the south side of the street; that when the motorcycle came within a distance variously estimated at from fifty feet to one-half a block, the truck driver drove the truck at an angle of approximately forty-five degrees from the south side of the street toward the north side across traffic moving east on the south side of the street; that the truck stopped in the street in such a position that its front bumper was in the middle of the street and the rear of the truck was toward the sidewalk on the south side; that the south side of the street (the motorcycle driver's right-hand side) was partially blocked; that the driver of the motorcycle applied his brakes and attempted to go in front of the truck on the

north side of the street, but was prevented from doing so by two cars moving in a westerly direction on that side of the street; that the driver of the motorcycle then turned back to the right to go behind the truck; that the driver of the truck backed the truck and the motorcycle skidded into the left side of the truck.

The plaintiff testified he did not keep a lookout ahead as the motorcycle proceeded at a speed of between twenty-five and thirty-five miles an hour, as he was seated immediately behind the driver of the motorcycle, whose head obstructed his view; that he left the driving of the motorcycle entirely to Hayes, whom he knew to be a good and careful driver; that he made no protest of any kind relative to the manner in which Hayes was driving the motorcycle in that nothing had occurred to justify or warrant a protest; that he did not drive a motorcycle and was not aware of any danger until the motorcycle was approximately 100 feet from the truck, when the driver put on the brakes and plaintiff then saw the truck ahead.

The driver of the truck involved in the accident did not testify. However, another occupant was called on behalf of the defendant and his testimony may be summarized as follows: The truck was parked on the south side of Bell Street in front of a building referred to in the testimony as the Hodo-Vandigriff Building; that just before the collision the truck started across the street in a northwesterly direction at an angle of about forty-five degrees moving in low gear at a speed of approximately ten miles an hour; that the truck had only moved about thirty "steps" when the collision occurred; that witness first saw the motorcycle when it was coming over the top of a hill approximately 800 feet away; that as the motorcycle approached, the truck driver "straightened the truck up and stopped" approximately in the center of the street; that there was traffic behind the truck moving in a westerly direction on the north side of the street; that the motorcycle as it approached first turned to the north side of Bell Street and then back to the south side and then skidded about eighteen or twenty feet on its left side into the truck; that the truck driver did not

put the truck in reverse, but that it was knocked back by the force of the collision with the motorcycle; that in his opinion the motorcycle was moving at a speed of approximately sixty miles an hour as it approached the truck.

Defendant insists that the trial court erred in refusing to grant the motion for a new trial on the ground that the great preponderance of the evidence established the fact that plaintiff, appellee, was guilty of contributory negligence.

■ It does not appear that plaintiff and Hayes, the driver of the motorcycle, were engaged in a joint enterprise. Phillips was a mere "passenger" or guest and was not directing or controlling the operation of the motorcycle, and hence was not chargeable with any negligence of the driver. Karpeles v. City Ice Delivery Co., 198 Ala. 449, 73 So. 642; Central of Georgia R. Co. v. Jones, 195 Ala. 378, 70 So. 729; Crescent Motor Co. et al. v. Stone, 211 Ala. 516, 101 So. 49; Pope v. Halpern, 193 Cal. 168, 223 P. 470.

■ A person riding in or on a motor vehicle driven by another, even though not chargeable with the driver's negligence, is not absolved from all personal care for his own safety, but is under the duty of exercising reasonable or ordinary care to avoid injury; that is, such care as an ordinarily prudent person would exercise under like circumstances. Moore v. Cruit, 238 Ala. 414, 191 So. 252; Proctor v. Coffey, 227 Ala. 318, 149 So. 838; Bradford v. Carson, 223 Ala. 594, 137 So. 426; McDermott v. Sibert, 218 Ala. 670, 119 So. 681; Birmingham Ry., Light & Power Co. v. Barranco, 203 Ala. 639, 84 So. 839.

■ We will not say that plaintiff was guilty of contributory negligence as a matter of law in such a way as to preclude his recovery, for the reason that he was riding as a passenger on a motorcycle built to accommodate two persons, at a speed of between twenty-five and thirty-five miles an hour, at the time and place the collision occurred. Zinn v. Updegraff, 113 Kan. 25, 213 P. 816. The case made by the facts differs materially from the case of Curley v. Mahan, 288 Mass. 369, 193 N.E. 34, relied upon by defendant.

The question as to whether the plaintiff exercised such care to avoid injury as an ordinarily prudent person would have exercised under like circumstances was for the jury, as was the question of proximate cause.

We are clearly persuaded no case is here presented for disturbance of the verdict on the motion for new trial as contrary to the preponderance of the proof.

Defendant insists that the trial court erred to a reversal in giving plaintiff's requested Charge No. 2, which charge will be set out in the report of the case. Translated in the light of the case presented by the evidence, plaintiff's Charge No. 2 simply stated the rule that plaintiff could not be chargeable with the driver's contributory negligence. It was evidently requested as a precaution against Phillips being held chargeable with any negligence on the part of Hayes, the driver of the motorcycle. This charge assumed nothing as to the facts, nor was its purpose to make the result of the case turn upon the legal principle there stated. It left room for the operation of correlated principles of law, which were of necessary consideration and which were elsewhere sufficiently stated by the court to the jury. We hold that there was no error in giving plaintiff's requested Charge No. 2. Karpeles v. City Ice Delivery Co., supra; Alabama Power Co. v. Pentecost, 210 Ala. 167, 97 So. 653; Moore v. Cruit, supra.

The trial court did not err to a reversal in refusing to permit defendant to show the speed of the motorcycle at a point four-tenths of a mile west of the collision. The admissibility of evidence regarding the speed of a motor vehicle before reaching the scene of the accident depends upon the facts of each case and must be left to the sound discretion of the trial court. Davies v. Barnes, 201 Ala. 120, 77 So. 612; Whittaker v. Walker et al., 223 Ala. 167, 135 So. 185; Townsend v. Adair, 223 Ala. 150, 134 So. 637; Hodges v. Wells, 226 Ala. 558, 147 So. 672. We will not say that the trial court abused its discretion in refusing to admit such testimony. The evidence shows that between the point of observation by the witness and the place of the accident there is a definite variation in grade in the highway and that the speed of the motorcycle was materially reduced at the intersection of Bell and Holt streets, where a traffic signal light is located. Moreover, the defendant received the benefit of similar testimony from this witness inasmuch as his deposition contains testimony that at the point of observation he was driving at a speed of twenty-five miles an hour on a motor scooter when the motorcycle involved in the collision passed him at a rate of speed twenty-five to thirty-five miles an hour faster than he was moving.

The Code of Ordinances of the City of Montgomery in effect at the time the collision occurred limited the speed of motor vehicles to twenty miles an hour on any street in the business district when traffic thereon was controlled at intersections by traffic officers or stop and go signals, and to fifteen miles an hour on all other streets in a business district.

§ 705(k) of said Code of Ordinances defined a business district as follows: "The territory contiguous to a street when fifty per cent or more of the frontage thereon for a distance of three hundred feet or more is occupied by buildings in use for business."

The defendant introduced in evidence a map or chart which shows the territory on both sides of Bell Street for a distance of approximately 1,200 feet west of the scene of the collision. On the north side of Bell Street there was no buildings within a distance of 300 feet west of the point of collision. On the south side of the street within a like distance some of the territory contiguous to the street was covered by buildings in use for business, but a portion of such frontage was not so covered but was used as an open parking lot. There is no evidence as to the nature or use of the property contiguous to Bell Street east of the point of collision.

After the jury had been out they sent word to the court that they would like further instructions. Upon returning to the courtroom, one of the juror addressed the court as follows: "Your honor, we would like a little interpretation of the following explanation of a business district.

It is a question in our minds whether or not the Code, in specifying a business district, would include land used in connection with the buildings, if the land should be entirely covered with the buildings to be qualified as a business property."

The court conferred with counsel without the presence of the jury and it was agreed that the courts should instruct the jury in accordance with their request. It was further agreed that after the court had so instructed, the parties could except to such portions thereof as they saw fit.

The jury was recalled and the following occurred in connection with such instructions:

"The Court: I understand the jury wants further instruction on what is a business district? Juror: Yes.

"The Court: Here is what the City Code says, that the territory contiguous to a street when fifty per cent or more of the frontage thereon for a distance of three hundred feet or more is occupied by buildings in use for business,—now, you want me to instruct you as to the meaning of that? Juror: That is correct.

"The Court: Well, I could do that, with both attorneys, for both sides, if they agree that I can so instruct you * * * and, with their permission to so instruct you, I do instruct you this: That where a building is the principal feature of the business, and it had land adjoining that was used as a part of that business, that that would be included here as business frontage; but, where the building is more or less incidental to the main feature, such as a parking lot, just had a small building in connection with the business, that would not be frontage as meant by this section. If they just had a large building and had ground for it to use in connection with it, that would be; but if the frontage was the part of the building, more or less collateral to that business, as I explained about the parking lot, or something like,—had a small building and wide grounds there,— it would not be so included; and it would mean that it had to be that way on both sides of the street, not just one side, but both sides. Any other questions? Juror: Your Hon-

or, would you consider a parking lot a business?

"The only thing I would say, if the parking lot, if you had a big business, the house was the main feature, and you had an entrance to go in there, but if you just had the big parking lot, and the little old building was incidental—that is what I was trying to explain to you,—that wouldn't be. But if you had a great big building, and entrances, and all, and maybe some parking space on the outside, that would be. The facts, you all have got to pass on. It might be that I am going out of the line to instruct you about the facts,—they did not agree to what I would consider the law,—but they agreed I could do it. Juror: That was the thing we wanted.

"The Court: Very well."

Defendant excepted to the above charge in its entirety and to many portions of it separately. In brief here filed, defendant insists that it was reversible error for the trial court to instruct the jury, in effect, that fifty per cent or more of the frontage on both sides of a street for a distance of 300 feet or more must be occupied by buildings in use for business in order to constitute a "business district" within the meaning of § 705(k) of the Code of Ordinances of the City of Montgomery. It is defendant's contention that a particular area is a "business district" within the purview of said § 705(k), supra, when fifty per cent or more of the property fronting on either side of the street for a distance of 300 feet meets the requirements of said section.

We agree with the construction placed on § 705(k), supra, by the trial court. In determining whether a particular point is within a business district as that term is used in said section, the condition of the property on both sides of the street for a distance of 300 feet must be taken into consideration. The phrase "territory contiguous to a street," as used in said § 705 (k), means the land lying along and adjoining and on either one or both sides of a highway. Mitchell v. Melts, 220 N.C. 793, 18 S.E.2d 406. The territory to be considered is not limited to a frontage of 300 feet but to the frontage on a street for a distance of 300 feet or more. Conse-

quently, consideration must be given to the condition of a total frontage of 600 feet, 300 feet on each side of the street, since property on both sides of the street fronts thereon. All the decisions from other jurisdictions which have come to our attention seem to have applied similar statutory provisions in the manner above indicated. Mitchell v. Melts, supra; McGill v. Baumgart, 233 Wis. 86, 288 N.W. 799; Volland v. McGee, 238 Wis. 598, 300 N.W. 506.

■ The portion of the trial court's instructions which related to the territory or land shown to have been used as a parking lot was not prejudicial to defendant. Territory or land contiguous to a street, which land is used as an open parking lot and is not covered by a building, cannot be considered as a part of the business frontage necessary to constitute a "business district" within the meaning of said § 705(k), supra. It is not the use to which the land is put that determines whether or not a particular area is within a "business district," but the purpose for which a building on the land is used. Territory cannot be considered as business frontage unless it is covered by a building, which building is used for business. McGill v. Baumgart, supra; Volland v. McGee, supra.

We have examined and treated all questions presented in argument, and find nothing that warrants a reversal of the judgment of the circuit court.

Affirmed.

All the Justices concur except STAKELY, J., not sitting.