**EMERINE et al. v. FORD et al.**

Court of Appeals of Kentucky.

Feb. 6, 1953.

Woodward, Hobson & Fulton, Louisville, J. W. Hodges, Elizabethtown, for appellants.

J. T. Hatcher, Elizabethtown, for appellees.

STEWART, Justice.

This is an appeal from a judgment rendered in two actions tried together by

agreement wherein Etta Ford recovered $1027 for personal injuries and the administrator of the estate of Glenda Dayne Ford recovered $10,200 for the alleged wrongful death of the latter.

The accident out of which this litigation arose occurred substantially as follows: On February 25, 1951, at about 6:30 p.m., Mrs. Ford and her two small children, six-year-old Glenda Dayne and four-year-old Gary, alighted from a bus on the east side of U. S. Highway 31–W in the village of Radcliffe, north of Elizabethtown, in Hardin County. Although it was after dark, the area was brightly illuminated by the lights of nearby establishments. At this particular place, the highway runs north and south and is divided into three lanes, each being 10 feet in width. After allowing the bus to proceed, Mrs. Ford, carrying a suitcase weighing 35 pounds and a purse in her left hand, started walking toward the west side of the highway.

Her version as to what happened thereafter is that she looked north, which was to her right, and saw no cars traveling toward her from that direction. Traffic was approaching from her left, or from the south, but she believed there was ample time to cross in front of these vehicles. As Mrs. Ford reached the center or passing lane she noticed the headlights of the Emerine car coming on her right and she then thought the car was 200 yards away. She said it was not until the car was "the length of the courtroom" from her, and she was 3 or 4 feet out in the west lane, that she realized she and her children might be struck. It was then she observed the car was traveling at a speed she estimated to be between 60 and 65 miles per hour and she determined she did not have time to make it across the highway. Mrs. Ford testified she was holding Glenda Dayne's left hand and Gary was holding Glenda Dayne's right hand. At no time did she stop walking until immediately prior to the accident. She stated that just before the impact occurred, "I stopped and stepped back and gave Glenda Dayne's arm a pull." The little girl was struck by the front of the car, near the left front headlight, according to her testimony. She and her son collided with the side and rear of the car and both were knocked down as the operator swerved his car to the right in an attempt to avoid the mishap. The force with which the car hit her rendered her unconscious. The little girl died as a result of the injuries she received.

Appellant, Keith O. Emerine, a 17-year-old boy, was operating the car of his father, A. J. Emerine, on this occasion, and A. J. Emerine is a party hereto under the family purpose doctrine. Young Emerine testified he was driving at a rate of speed of about 40 miles per hour as he approached the scene of the accident. He said he first saw Mrs. Ford and her two children when he was 200 feet away from them, at which time they were standing in the middle lane and Mrs. Ford did not have hold of the hand of either child. Continuing, he testified: "I saw the two children dart away from the mother as she stepped back and then I started turning to the right." He stated his car stopped within 8 or 10 feet after the children had come in contact with it, and the little girl lay 3 feet west of the road pavement about even with his front wheel after the accident.

Only two persons actually witnessed the accident other than Mrs. Ford and Keith O. Emerine, namely, Jesse Shivley and Barbara Coward, and their testimony seems to establish that the little girl was, at most, not more than an arm's length in front of her mother when the impact took place. The speed of the car at the moment of the accident was variously estimated by these two witnesses at from 40 to 50 miles per hour. Barbara Coward stated Glenda Dayne was struck by the side of the car; Jesse Shivley said the left front headlight hit her. Practically all of the witnesses agree that the little girl was knocked forward in the same direction in which the car was traveling and that her body, after being hit, traveled about as far as the car did.

Although appellants concede there was evidence of negligence on the part of Keith O. Emerine because he was operating the car at an unlawful rate of speed when the accident occurred, still they maintain Mrs. Ford was guilty of contributory negli-

gence as a matter of law, both in regard to her own safety and the safety of her two children, and they claim the court therefore erred in not directing a verdict for them. It is next urged that the instructions were erroneous (a) in imposing on the driver of the car the duty to give a warning of its approach and (b) in authorizing any recovery by the administrator of the child, Glenda Dayne Ford, in the event that negligence of the child's mother contributed to her death. Finally, appellants contend the trial court erred in admitting incompetent evidence (a) by permitting a witness to testify as to marks he saw on the road the day after the accident and (b) by allowing a non-medical witness to testify that Mrs. Ford was out of her mind, had lost her memory and did not know what she was doing shortly after the accident. We shall deal with each complaint in the order stated.

Counsel for appellants argue that Mrs. Ford, handicapped by a heavy and awkward load and by the custody of two children, was guilty of negligence as a matter of law because she started across the highway knowing that the car, 200 yards away and approaching at a speed of from 60 to 65 miles per hour, was bearing down on her. We have carefully read the evidence and in our construction of Mrs. Ford's testimony we do not believe she conveys the idea that the Emerine car was traveling from 60 to 65 miles per hour when she first saw it 200 yards away and at the time she was standing in the center lane. She was recalled for direct examination and specifically questioned as to when she was able to estimate the speed of the car and she stated, as we have mentioned heretofore, it was not until she was 3 or 4 feet into the west lane and the car was, and we quote her, "as far as from here to the back of the courtroom" from her and the children.

■ We must appraise Mrs. Ford's conduct from the time she began her journey until the moment of the accident, and when we do we note that she looked up and down the highway to ascertain if it was safe to cross it. There was plenty of time to get clear of northbound traffic.

When she reached the center lane, she said she noticed appellant, Keith O. Emerine, approaching some 200 yards away. She had a right to assume that he was traveling within the legal speed limit and that he would exercise due care not to run her down. Huddy in his Cyclopedia of Automobile Law, Vols. 5–6, Sec. 93, p. 162, has this to say on the subject of miscalculation of danger by a pedestrian: "While a pedestrian may not heedlessly step in front of a moving car, some latitude is allowed to a pedestrian who miscalculates the danger of crossing a street in front of an approaching car. His error in judgment does not necessarily preclude a recovery if the machine is approaching at an unlawful or an unreasonable rate of speed. Whether he is guilty of contributory negligence in assuming that he can cross in safety is generally a question for the jury."

■ We conclude Mrs. Ford was not guilty of contributory negligence as a matter of law. It was for the jury to decide whether her conduct on the occasion in question was that of an ordinarily prudent person under like circumstances, and whether she was so careless of her own and her children's safety as to defeat her right of action and that of the administrator of her deceased child.

■ Coming now to the second ground urged for reversal, it is contended the court erred when it told the jury it was the duty of the driver of the Emerine car to give timely and reasonable warning of its approach, although it clearly appears from her testimony that Mrs. Ford was aware the car was coming toward her from the time she first saw it 200 yards away. This court has many times held it is not necessary for a motorist to sound his horn where one knows the machine is approaching him. The jury might well have predicated their verdict upon a failure to conform to this duty, which the instruction made it possible for them to do, and for this reason a reversible error was committed. Field v. Collins, 263 Ky. 474, 92 S.W.2d 793; and Rabold v. Gonyer, 285 Ky. 618, 148 S.W.2d 728. But the theory is advanced that the children should have been warned never-

theless, although Mrs. Ford would not have been entitled to the instruction if her case had been tried separately. However, this argument overlooks the fact that the child is not suing; that the children were not responsible for their acts in this instance, as they were under the complete control of their mother; and that if there is a recovery by the administrator in this case, one-half of the judgment will belong to Mrs. Ford.

In giving "Instruction No. 5" the court authorized the jury to award the administrator only one-half of the damages found in event they returned a verdict if they should believe Mrs. Ford's contributory negligence was the sole cause of the death of the child. This was on the assumption Mrs. Ford would be entitled to one-half of the recovery and she should not be allowed to profit by her negligence. Although the weight of authority is to the effect that the negligence of one beneficiary under a statute such as KRS 411.130(2) (d) will prevent recovery only to the extent of his or her interest (Prosser on Torts, 1941 Edition, pp. 423 and 424), this court is definitely committed to the doctrine that a father may not recover where his wife's negligence contributed to the death of a child, since the wife-mother is considered the father's agent as to the custody of the child and since the recovery sought is for their joint benefit. Toner's Adm'r v. South Covington & C. St. Ry. Co., 109 Ky. 41, 58 S.W. 439; Mills' Adm'r v. Cavanaugh, 29 Ky. Law Rep. 685, 94 S.W. 651; Wheat's Adm'r v. Gray, 309 Ky. 593, 218 S.W.2d 400, 7 A.L.R.2d 1336.

Appellees rely upon Hale v. Hale, 312 Ky. 867, 230 S.W.2d 610; a later case than those above cited, and contend that the Hale case supports the instruction as given. The Hale case is clearly in conflict with the Wheat case, supra, and the prior decisions upon which the Wheat case is based. But, the Hale case specifically states that it does not abrogate the rule set forth in the Wheat opinion. Any further doubt we might have on the point under consideration has been removed by this court in the recent opinion of Burch v. Byrd, Ky., 246 S.W.2d 595, wherein we affirmatively held the negligence

of one parent beneficiary would bar all recovery. It follows that Instruction No. 5 was prejudicially erroneous.

The testimony of James Russell, a witness for appellees, as to the skid marks purportedly made by the Emerine car, is also under attack, it being contended that since he saw the marks the morning following the accident, they had been obliterated at that time. Fred Skaggs, another witness for appellees, located the marks and no question is raised as to his testimony on this point. Russell went to the scene of the accident almost immediately after it occurred but he did not then look at the marks. He returned early the next morning and he and Skaggs at that time made a detailed examination of the marks, Skaggs pointing out the marks to Russell. The evidence convinces us the marks were still plainly visible when Russell and Skaggs viewed them. There was no error in admitting this testimony under the circumstances we have outlined. See Lever Bros. Co. v. Stapleton, 313 Ky. 837, 233 S.W.2d 1002.

It is finally argued that the court wrongfully permitted Russell to testify to the effect that Mrs. Ford on the night of the accident was out of her mind and she had lost her memory, so that she did not know what she was doing or saying at the time he saw her at the Fort Knox Hospital. This evidence was objected to on the theory that Russell, a mere lay witness, was presuming to testify as a medical expert. It seems to us that Russell was only testifying to conditions that were wholly within his observation. A witness is permitted to state a fact known to or observed by him even though his statement involves a certain element of inference. 32 C.J.S., Evidence, § 459, p. 101. A nonexpert witness, claiming to know and having the opportunity to observe the conduct of a person, may give his opinion as to the latter's mental capacity, the question of the weight and the value of such opinion being one for the jury. Murphy's Ex'r v. Murphy, 146 Ky. 396, 142 S.W. 1018. It is also generally held that one may testify as to the emotions manifested by another and observed by the witness. Kubicek v. Slezak, 119 Neb. 542,

230 N.W. 248, 69 A.L.R. 1166. We therefore conclude Russell's testimony was competent and it was for the jury to give it such weight as they thought it merited.

Wherefore, the judgment is reversed with directions that it be set aside and for further proceedings consistent with this opinion.