Merle R. MILLER and Farmers Mutual In-
surance Company, a corporation,
Plaintiffs and Appellants,

v.

Peter F. LARSON and Herman Anderson,
Defendants and Respondents.

No. 7801.

Supreme Court of North Dakota.

March 19, 1959.

Lanier, Lanier & Knox, Fargo, and Hjellum, Weiss, Nerison & Ottmar, Jamestown, for plaintiffs and appellants.

Nilles, Oehlert & Nilles, Fargo, for defendants and respondents.

MORRIS, Judge.

On May 14, 1956 at about 7:15 o'clock a. m. a collision occurred on U. S. Highway number 10 near Buffalo, North Dakota between a 1955 Lincoln automobile driven by the plaintiff, Merle R. Miller, and a farm tractor driven by Peter F. Larson who was employed by the defendant Herman Anderson, owner of the tractor. The Farmers Mutual Insurance Company was the insurer of Miller's automobile and is joined in the action as a plaintiff because it claims to be subrogated for the amount paid to Miller as insurance. Miller was severely injured and his car demolished. He sued both the owner and the driver of the tractor for damages for his personal injuries and damage to his car.

The defendants deny negligence on their part and allege that the accident was caused solely by the negligence, carelessness and unlawful driving of Miller and that his negligence contributed thereto. The defendants also counterclaim, Anderson for damage to the tractor and Larson for personal injuries. The counterclaim is contested by the plaintiffs' reply. The case was tried to a jury that brought in a verdict in favor of the defendants for a dismissal of plaintiffs' action and awarded the defendants nothing on their counterclaim. From a judgment entered pursuant to the verdict the plaintiffs appeal. Neither the sufficiency of the evidence nor the instructions of the court are challenged. The only questions presented by the specifications of error deal with the admission and the exclusion of evidence.

The accident occurred as the plaintiff was proceeding east at a point about one mile west of Buffalo where U. S. Highway 10 is intersected by a road running north and south. The tractor driven by Larson was struck by Miller's car as the tractor, proceeding in a southerly direction, was crossing the highway. Highway 10 is a favored highway guarded by stop signs at the intersections. Neither of the principals involved in the accident is able to testify regarding the speed of Miller's car as it approached the intersection. Miller has little recollection of events immediately preceding the accident and does not know at what speed he was driving that morning. He regularly drove on his morning trips to work at a speed that registered 65 to 70 miles per hour on his speedometer which indicated ten per cent in excess of the true speed. Larson did not see Miller's car until it hit his tractor.

The plaintiffs assign as prejudicial error the refusal of the trial court to permit the witness Olsberg to testify over objection regarding the speed of Miller's automobile about two miles west of the point where the accident occurred. This witness was driving a dairy truck. He was proceeding eastward on highway 10. He had seen Miller's Lincoln automobile gradually creeping up on him in his rear view mirror. Olsberg was driving about 45 or 50 miles per hour. Another truck described as a "Hart semi" was proceeding ahead of Olsberg at a distance of about a third of a mile. Miller's Lincoln passed Olsberg's truck and about a mile farther on passed the Hart semi a mile to three quarters of a mile west of the scene of the accident. Objections to questions pertaining to the speed of Miller's car were sustained. Plaintiffs' attorney then made the following offer of proof:

"Now comes the plaintiff and offers to prove by the witness, Olsberg, that on the day of the accident and the few seconds immediately preceding the accident that he was driving his Knerr Dairy truck in an easterly direction

on U. S. Highway 10 at a point about two miles short of and west of the scene of the accident herein; that he was traveling at a speed between 45 and 50 miles per hour; that for about two miles previous thereto he had seen the Lincoln automobile of the plaintiff creeping up behind him; that eventually and at the point of approximately two miles west of the accident that the Lincoln automobile passed him; that at the time the Lincoln automobile of the plaintiff was going at a normal speed within the speed law, and that he noticed nothing whatever unusual about his driving or his passing; that in front of him was a Hart Express truck, and that about a mile later at a point about one mile from the scene of the accident he saw the plaintiff's Lincoln pass said Hart Motor Express; that in the interval he had noticed no pickup or change in speed of the Lincoln automobile and that it appeared to him that his passing of the Hart Motor Express was perfectly normal and within all of the legal rules of the road; that he shortly thereafter came upon the scene of the accident and got out of his own truck; that his arrival at the scene of the accident was momentarily as one of the parties had not been removed from the car and the defendant Larson was still on his hands and knees in the ditch."

Counsel for defendants then said:

"So far as the offer of proof of the plaintiff is concerned it is opposed and resisted."

He stated no grounds for his opposition. However, from the context of the discussion regarding admissibility insofar as it appears in the record there seems to have been no objection to the form of the offer of proof or its contents other than that it pertained to the speed of Miller's car at a point remote from the scene of the accident and was therefore immaterial. This is clearly the view of the trial court, for he said:

"I will deny the offer of proof and evidence that is being attempted to be shown here as to his passing these trucks here and as to the reasonableness of his driving. There would be plenty of opportunity for him in that distance there to have raised his speed considerably. And I don't think it has any connection with this accident. I don't think it is material. For the reason that it is too remote from the accident to such an extent that it would leave so many speculative angles in it that I can't help but feel that any observations made two miles away from this accident are not material to this lawsuit."

The offer of proof was made out of the hearing of the jury. After its denial the parties returned to the courtroom where plaintiff's counsel said:

"I presume now that under the rulings that have been had the testimony of George Wirth, the operator of the Hart Express Company truck, that the same ruling would apply on him as had on this one?"

The court replied in the affirmative and counsel continued:

"With that ruling in mind, your honor, at this time I request that my same offer of proof with respect to George Wirth's stand as was made to Olsberg. * * * This other truck was a mile, your honor, so if I could just have my offer of proof stand and adding to it to show that he was a mile away."

Counsel for defendant declined to interpose an objection until George Wirth was called. The court stated that this offer of proof would be denied. The witness Olsberg who was still on the stand was then dismissed. Wirth was never called. No other statement as to the contents of Wirth's proposed testimony was made. The offer of proof with respect to Olsberg cannot be made applicable to Wirth in this manner

for it is obvious that the testimony of the two witnesses would not have been the same. Under this confused state of the record no adequate offer of proof of Wirth's proposed testimony appears to have been made.

"A mere general offer of proof without producing the witness or stating the evidence whereby the fact in issue is to be proved, or, if the witness be present, without putting a question to him in such form as to give opportunity for objection, is not correct trial procedure and it affords no ground for appeal."

Douillard v. Woodd, 20 Cal.2d 665, 128 P. 2d 6, 9. See also Stickel v. San Diego Electric Ry. Co., 32 Cal.2d 157, 195 P.2d 416.

At the time the trial court ruled on the plaintiffs' offer of proof of Olsberg's testimony there was no evidence of speed other than Miller's customary speed in making his morning trip to his place of employment. The witness' last observation of Miller's car was about a mile from where the accident occurred. There is no evidence as to Miller's speed during that last mile.

The supreme court of Nebraska has stated the rule to be:

"The question of the admissibility of evidence as to the speed of a vehicle shortly prior to the time of an accident rests largely in the discretion of the court."

Shields v. County of Buffalo, 161 Neb. 34, 71 N.W.2d 701, 704; Buhrman v. Smollen, 164 Neb. 655, 83 N.W.2d 386. Similar statements are made in Schwarting v. Ogram, 123 Neb. 76, 242 N.W. 273, 81 A.L. R. 769 and Showers v. A. H. Jones Company, 126 Neb. 604, 253 N.W. 902. In Ambrozi v. Fry, 158 Neb. 18, 62 N.W.2d 259, 265, the court commented:

"As stated in Prince v. Petersen, supra (144 Neb. 134, 12 N.W.2d [704] 707): 'The rule of these cases is hereby approved but the discretion therein contemplated does not permit the admission of evidence of speed at other points unless the points are of such close proximity that a reasonable inference could be drawn that it was continued to the point of accident, or unless, if more remote, there is evidence of fact or circumstance from which a reasonable inference could be drawn that speed was continued at approximately the same rate over the intervening distance.' "

In Ritchey v. Watson, 204 Cal. 387, 268 P. 345, 347, it is said:

"Nor is there any merit in the claim that the trial court committed error in admitting evidence of the speed of the bus in approaching the scene of the accident when a few hundred feet away therefrom. The question as to whether or not this evidence was objectionable as being too remote was a matter of discretion of the trial court. No hard and fast rule can be laid down upon this subject."

This rule with respect to the discretion of the trial court has been applied in sustaining the discretion of the court in Ackel v. American Creamery Company, 12 Cal. App.2d 672, 55 P.2d 1195, where the proffered evidence was excluded and in Pruitt v. Krovitz, 59 Cal.App.2d 666, 139 P.2d 992, where the evidence was admitted.

The discretion of the trial court in admitting or in rejecting evidence similar to that under discussion has been sustained in these cases. Utility Trailer Works v. Phillips, 249 Ala. 61, 29 So.2d 289; Tobin v. Van Orsdol, 241 Iowa 1331, 45 N.W.2d 239; Anderson v. Elliott, 244 Iowa 670, 57 N.W.2d 792; Slate v. Saul, 185 Va. 700, 40 S.E.2d 171. Other cases of like import are cited in a note 46 A.L.R.2d 35.

The rule under discussion is generally applied in the federal courts. Comins v. Scrivener, 10 Cir., 214 F.2d 810, 46 A.L.R. 2d 1. In David Bilgore & Co., Inc. v. Ryder, 5 Cir., 211 F.2d 855, 858, the court in

sustaining the discretion of the trial judge in excluding evidence similar to that involved in this case commented:

"The proposed witnesses gave the speed of plaintiff's car when it passed them about ¾ of a mile before the accident, but there is no evidence that they continued to observe it after it passed them. The terrain in that vicinity is 'rolling' and the road passes over a series of small hills which obscure vision from time to time. There is positive evidence that these witnesses did not see the collision, and consequently did not know the speed of plaintiff's car at that time, although they did identify plaintiff's car as the one which passed them back down the road. In these circumstances, with the rolling terrain, there is no persuasive presumption that plaintiff's car maintained the speed at which the proposed witnesses said it was traveling when it passed them ¾ of a mile back down the road."

In this case the witness Olsberg testified that at the time of the impact he was in a ravine about one-half or three quarters of a mile west of the scene of the accident and that he did not realize what had happened until he had proceeded a short distance after he came up out of the ravine because of the truck that was preceding him. He also said that at the time Miller's car passed him he was just coming out of a curve. The maximum permissible speed on highway 10 at the place where the accident occurred was 65 miles per hour. When the offer of proof is considered in the light of the facts and circumstances appearing in the record at the time the offer was made, we reach the conclusion that the admission of the proffered testimony was clearly a matter within the discretion of the trial court and its exclusion did not constitute an abuse of that discretion.

The plaintiffs contend that the court erred in allowing a highway patrolman, Donald O. Peterson, to testify over objection as to a conversation he had with Miller at a hospital in Valley City between eleven and twelve o'clock in the forenoon of the day of the accident. Miller had testified that he remembered very little as to what happened on the day of the accident. The only things that he remembers are that he was in an ambulance, that he was on the operating table and that Ted Dobler, foreman of the job where he worked, brought him his check at the hospital that evening, but he doesn't remember what they talked about. The doctor that attended Miller testified that he treated the patient for shock but gave no testimony as to his mental condition. Miller's wife testified that when she arrived at the hospital about noon on the day of the accident her husband was unconscious or sleeping.

The witness Peterson testified that he was admitted to Miller's hospital room by a sister or a nurse. He was in uniform, identified himself to Miller and told him that the witness would ask him a few questions pertaining to the accident. When Peterson was asked on the witness stand if Miller was conscious the question was objected to as calling for a conclusion. The objection was overruled and the answer was affirmative. The witness was further permitted to testify that Miller appeared to him to be rational. The objection to this was that the question called for a medical conclusion not within the scope of the witness' knowledge. Peterson was permitted to testify further over objection as follows:

"He told me, 'the farmer stopped his tractor on the approach before crossing highway.' He stated, 'I was driving east at about 75 miles per hour.' He said, 'I was going to Fargo at time of accident.' And, 'I had sun glasses on visor down at time of accident.' He stated, 'I pulled over to the right and tried to miss him and put on brakes.' And the last thing that he told me as I went out of the room, he said: 'The only thing you can get me on is speeding.' "

The plaintiffs argue that it was error for the court to permit the highway patrolman to testify that Miller was conscious and appeared to be rational and to further testify as to what Miller said to him on the ground that the statements purported to have been made by Miller were not competent to be used against him because of his physical and mental condition.

 The statements of the witness as to Miller's condition when considered in the light of the background circumstances upon which they are founded appear to be within the field of evidence that is part fact and part conclusion. The true picture could not be presented to the jury by recitation of purely factual observations. It is generally held that under these conditions it is not error for the court to admit such testimony. Jones Commentaries on Evidence, 2nd Ed., Sec. 1251; 20 Am. Jur., Evidence, Sec. 823; Wigmore on Evidence, 3rd Ed., Sec. 1919; Emerine v. Ford, Ky., 254 S.W.2d 938. This court passed squarely on the question in Hoffer v. Burd, 78 N.D. 278, 49 N.W.2d 282, and held such evidence to be admissible.

The plaintiffs further contend that by other evidence Miller was shown to have been either unconscious or irrational at the time of the interview. We are unable to agree with this contention. It is supported only by a vague inference derived from testimony that when he was attended by a doctor earlier in the forenoon he was suffering from shock, that Miller remembers little that happened that day after the accident and that his wife testified he was either unconscious or asleep when she reached the hospital about noon. On the other hand the witness Ted Dobler, who was the foreman under whom Miller worked and who brought Miller's check to him on the evening of the accident, testified without objection that he believed Miller was conscious and pretty much rational when Dobler talked to him and that in reply to the inquiry as to what had happened Miller told him that he had gotten into an accident, that he was going about 70 or probably 75 miles an hour. The trial court did not err in permitting the witness Peterson to testify as he did with regard to Miller's observable mental condition and upon that foundation in admitting Peterson's testimony regarding his interview with Miller. The judgment appealed from is affirmed.

SATHRE, C. J., and BURKE and TEIGEN, JJ., concur.