Beverly THOMPSON, Plaintiff and Appellant,

v.

Galen NETTUM and Hjelmer Nettum, Defendants and Respondents.

Howard THOMPSON, Plaintiff and Appellant,

v.

Galen NETTUM and Hjelmer Nettum, Defendants and Respondents.

Civ. Nos. 8493, 8494.

Supreme Court of North Dakota.

Dec. 10, 1968.

Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, for plaintiffs and appellants.

Wattam, Vogel, Vogel, Bright & Peterson, and David F. Knutson (on oral argument), Fargo, for defendants and respondents.

PAULSON, Judge.

This is an appeal by the plaintiffs, Beverly Thompson and Howard Thompson, husband and wife, from a judgment entered in the district court of Cass County, North Dakota, for a dismissal of their two claims against the defendants, Galen Nettum and Hjelmer Nettum. Plaintiffs shall hereafter be referred to as the Thompsons and the defendants as the Nettums.

The two cases were combined for trial in the district court and for this appeal. The claims were tried before a jury. At the close of the Thompsons' case the attorneys for the Nettums moved in the alternative under Rule 41(b), North Dakota Rules of Civil Procedure, that the complaint of each of the Thompsons be dismissed on the ground that under the facts and the law the Thompsons had failed to prove a prima facie case of actionable negligence against the Nettums; and, secondly, for a directed verdict against both the Thompsons in favor of the Nettums for the dismissal of the Thompsons' claims. The attorneys for the Thompsons resisted the motions and also moved for a directed verdict for each of the Thompsons. The trial court granted the motion of the Nettums for a dismissal of the Thompsons' claims, together with dismissing the counterclaims interposed by the Nettums. The Thompsons appealed from the judgment entered pursuant to the order of dismissal.

Beverly's complaint was based upon the negligence of Galen Nettum in the operation of a vehicle owned by his father, on the grounds that Galen failed to yield the right of way, exceeded the speed limit, failed to have his vehicle under proper control, failed to maintain a proper lookout, and was otherwise generally negligent; and that such negligence was the proximate cause of her injuries. Howard's action included allegations of damages for the hospital, dental, and doctor bills for his wife, together with the loss of a 1960 Ford Fairlane 4-door sedan. The Nettums in their answer generally denied the allegations of the complaint and, in addition, alleged contributory negligence and set forth counterclaims for damages based upon Beverly's negligence.

The Thompsons assert that the court erred in granting the Nettums' motion and

also erred in denying the Thompsons' motion for a directed verdict. The specific errors of law are set forth herein:

"(a) Erred in granting defendants' motion to dismiss or in the alternative a directed verdict;

"(b) The court erred in directing [denying] a directed verdict on behalf of Howard Thompson;

"(c) The court erred in denying plaintiffs' motion that the defendants failed to prove contributory negligence as a matter of law on plaintiff Beverly Thompson.

"2. The court erred in granting defendants' motion prohibiting witness Melvin Stenseth from testifying as to the speed of the defendant Galen Nettum's vehicle a short distance prior to the accident * * *."

In addition thereto, the Thompsons have set forth specifications of the insufficiency of the evidence:

"(a) Plaintiffs presented a prima facie case of negligence against the defendants and freedom from contributory negligence on the presumption of due care that the defendant Galen Nettum was required to obey the law but didn't and that the defendant Galen Nettum violated the statutory yield the right-of-way;

"(b) That there was no evidence that the plaintiff Beverly Thompson was guilty of contributory negligence;

"(c) That the judgment of dismissal of the plaintiffs' claim is against the evidence and the law;

"(d) That defendants wholly failed to show or prove any contributory negligence;

"(e) That the undisputed evidence shows affirmatively that the defendant Galen Nettum's negligence was the proximate cause of plaintiffs' injuries and damages;

"(f) That the undisputed evidence shows that the defendant Galen Nettum was negligent and his negligence the proximate cause of the plaintiffs' injuries and damages as a matter of law;

"(g) Plaintiffs assert and claim that the evidence is insufficient to support the judgment of dismissal as against Howard Thompson for the following reasons and in the following particulars:

"i. That the judgment is against the evidence and law;

"ii. That the defendant Galen Nettum was the proximate cause of the damages as a matter of law and that Howard Thompson being the non-driver owner of the Thompson vehicle as a matter of law was not guilty of any contributory negligence.

"(h) Plaintiffs assert and claim that the evidence is insufficient to support the judgment or dismissal for the following reasons and in the following particulars:

"i. That with respect to the denial of plaintiffs' motions for directed verdict, the evidence is conclusive as a matter of law that Galen Nettum's negligence was the sole proximate cause of plaintiffs' damages and injuries and that said plaintiffs were free from contributory negligence thereon."

Before proceeding further with the issues, it is necessary to recite the facts in this case. Beverly Thompson and her husband, Howard Thompson, resided on a rented farm near Kindred, North Dakota. Beverly was a Fuller Brush saleswoman and, at the time of the accident, was proceeding to Davenport in a vehicle owned by her husband. The vehicle was being driven by her with Howard's consent. Hjelmer

Nettum and Galen Nettum are father and son. Galen, age 15, was driving his father's vehicle. The Nettums live three-quarters of a mile west of the intersection of an east-west township road called the Christchana road and a north-south county road designated Cass County No. 27, or the Davenport road. This accident occurred on September 29, 1965, at approximately 8:30 a. m. Both drivers were familiar with the intersection. Beverly was proceeding north on the Davenport road. Galen was driving east on the Christchana road toward Kindred, where he was a junior in high school. Both roads were straight and level for more than half a mile from the intersection and met each other at 90-degree angles. There were no traffic-control signals or traffic signs of any kind governing the accident intersection. There were no eyewitnesses to the accident. Both parties were suffering from retrograde amnesia and neither had any recollection of the accident. The southwest corner of the intersection was open, clear, and unobstructed by buildings, trees, or any other fixed objects. The Nettum vehicle was damaged on the right side from the front fender to and including the right front door. The Thompson vehicle was severely damaged across the front end. Both vehicles were sold for salvage. There were no visible skid marks and the collision occurred in the intersection. There was testimony tending to show that the intersection was obscured by fog and light rain. The lights on the Nettum vehicle were not burning and there is no evidence to indicate whether or not the lights on the Thompson vehicle were burning. The eastbound Nettum vehicle came to rest in a field, northeast of the northeast corner of the intersection. The Thompson vehicle came to rest in a ditch in the northeast corner of the intersection. Both parties suffered injuries.

The application of Rule 41(b), N.D.R. Civ.P., will first be considered by this court. The pertinent part of the rule which applies in the instant case reads as follows:

"RULE 41

"DISMISSAL OF ACTIONS

\*　\*　\*　\*　\*　\*

"(b) Involuntary Dismissal—Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. \* \* \*"

The trial court in granting the motions on behalf of the Nettums treated such motions as motions for dismissal, as is shown by the order for judgment and the judgment. As is stated in 2B Barron & Holtzoff, Federal Practice and Procedure (Wright ed.) § 919, p. 146:

"After the plaintiff has presented his evidence at the trial and closed his case, the defendant may move for a dismissal under the express terms of Rule 41(b) 'on the ground that upon the facts and the law the plaintiff has shown no right to relief'. Moreover the rule expressly provides that by making the motion the defendant does not waive his right to offer evidence in the event his motion is denied."

This court believes that Rule 41(b), N.D.R. Civ.P., was the rule to be employed in this case and that Rule 50(a), N.D.R.Civ.P., would not be applicable, since in the case at bar only the evidence of the Thompsons had been completed at the time the motions were made. The trial court granted the motions for dismissal upon the ground that the Thompsons had failed to prove a prima facie case against the Nettums. It is therefore necessary for this court to consider the evidence adduced by the Thompsons in the light most favorable to them as the

parties against whom the motions were made. While this court has not heretofore considered the weight to be given the evidence adduced in reviewing a dismissal, under Rule 41(b), N.D.R.Civ.P., this court several times has concluded in recent decisions in which motions for a directed verdict have been made that in considering the validity of a ruling on a motion for a directed verdict, the evidence must be reviewed in the light most favorable to the party against whom the motion was made. State Automobile & Casualty Under. v. Skjonsby, 142 N.W.2d 98 (N.D.1966); Stokes v. Dailey, 85 N.W.2d 745 (N.D. 1957). We are of the opinion that the decisions in those cases are controlling in applying such rule to the motions which were made in this case.

Since we adhere to the decisions mentioned in the preceding paragraph, we immediately are confronted with the question: Were there any issues to be deliberated upon by the jury?

▊ The Thompsons' claims were based upon circumstantial evidence, and they assert that a presumption of due care arose where Mrs. Thompson suffered from retrograde amnesia and there were no eyewitnesses to the accident. It is further contended by the Thompsons that this alleged presumption, together with the alleged violation of the statutory right-of-way rule by Galen Nettum and the testimony of Melvin Stenseth, constituted a prima facie case and thereby created an issue of fact for the jury. The Thompsons, in support of their motions for a directed verdict, assert that Galen Nettum's violation of the statutory right-of-way rule was negligence as a matter of law and, further, that there was no evidence of contributory negligence on the part of Beverly Thompson and that, even if there were, it would not be imputable to Howard Thompson's claim. It is fundamental that the Thompsons have the burden of proving that Galen Nettum was negligent and that his negligence was the proximate cause of the damages which were incurred by the Thompsons. The question as

to whether the presumption of due care shall be extended to cases involving amnesia where, by reason of brain injury from an accident a party suffers from retrograde amnesia and cannot remember so as to testify concerning his conduct at or immediately prior to the accident, is one of first impression for this court. The record reveals that Beverly Thompson suffered from retrograde amnesia and her testimony was medically corroborated by Dr. Maynard B. Gustafson, a nuerosurgeon of Fargo, North Dakota. The evidence also shows that Galen Nettum was afflicted with similar amnesia and such testimony was elicited by the Thompsons' attorney on cross-examination, and was further buttressed by the testimony given by Galen Nettum on direct examination by his attorney. There was no testimony offered in opposition to Galen's amnesia. Thus, such amnesia was proven. The presumption of due care is set forth in Section 31–11–03, N.D.C.C., which states:

"All presumptions other than those set forth in section 31–11–02 [conclusive presumptions] are satisfactory if uncontradicted. They are denominated disputable presumptions and may be contradicted by other evidence. The following are of that kind:

\* \* \* \* \* \*

"4. That a person take ordinary care of his own concern; \* \*. \*"

This disputable presumption of due care, also designated the "no eyewitness" rule, has been applied in this State in death cases. Cameron v. Great Northern Railway Co., 8 N.D. 124, 77 N.W. 1016 (1898); Kunkel et al. v. Minneapolis, St. P. & S. S.M.R. Co. 18 N.D. 367, 121 N.W. 830 (1909); Sherlock v. Minneapolis, St. P. & S.S.M.R. Co., 24 N.D. 40, 138 N.W. 976 (1912); Rober v. Northern P. Railway Co., 25 N.D. 394, 142 N.W. 22 (1913); Hausken v. Coman, 66 N.D. 633, 268 N.W. 430 (1936); Bratvold v. Lalum, 68 N.D. 534, 282 N.W. 514 (1938); Smith v. Knutson, 76 N.D. 375, 36 N.W.2d 323 (1949); Quam v. Wengert, 86 N.W.2d 741 (N.D.1957);

Serbousek v. Stockman Motors, Inc., 106 N.W.2d 879 (N.D.1960). The majority of the courts in the United States have extended the presumption of due care for an injured party suffering from loss of memory by reason of accident. 141 A.L.R. 872 (1942); 29 Am.Jur.2d, Evidence § 215, p. 267; 31A C.J.S. Evidence § 135, pp. 280–281; 11 Blashfield, Automobile Law & Practice (3rd ed.), § 417.2, p. 144; 9 Wigmore, Evidence (3rd ed.) § 2507 (1964 Pocket Supp.). It appears to be both logical and reasonable to extend the presumption of due care to cover situations involving loss of memory. In Schultz and Lindsay Construction Co. v. Erickson, 352 F.2d 425 (8th Cir.1965), at page 434, the court stated:

> "There is no rational reason why the presumption should not be extended to cover situations in which the injury causes loss of memory; in fact, logic supports such an extension, since a person without memory of an accident can supply no more information about the circumstances of the accident than can a person who was killed."

In the instant case both drivers were entitled to the presumption of due care because of their retrograde amnesia.

■ Thus any presumption of due care applicable to Mrs. Thompson would apply with equal merit to Galen Nettum. We believe that the better rule is that identical conflicting presumptions balance and cancel each other. McCormick, Evidence (HB) § 312, p. 653; 31A C.J.S. Evidence § 119, pp. 218–219.

■ Having determined that identical conflicting presumptions nullify each other, the determinative issue is whether the Thompsons proved a prima facie case without the benefit of the presumption of due care. The Thompsons assign as prejudicial error the refusal of the trial court to permit Stenseth to testify over objection regarding the speed of Galen Nettum's automobile as it left the driveway of the Hjelmer Nettum farm, approximately three-quarters of a mile west of the scene of the accident. The Thompsons urge that, in the absence of other testimony in the case, evidence of Galen's speed should have been admissible because the accident occurred at approximately 8:35 a. m.; that Galen was late for school and, therefore, would be traveling at an excessive rate of speed. Stenseth testified that he was operating the road maintainer in an easterly direction on the Christchana road, a quarter of a mile west of the Nettum farm and nearly a mile west of the accident intersection; that the Nettum car popped out of the driveway and turned east; that he did not follow the car; that he did not see the accident; nor could he determine the speed of the vehicle as it left the driveway. Objections to questions with reference to the speed of Galen's car were sustained and the Thompsons' attorneys then made the following offer of proof:

> "MR. MAGILL: Your Honor, now out of the presence of the jury, the plaintiff would make an offer of proof with respect to the testimony of Melvin Stenseth, who, while on the witness stand, was asked the question substantially and to the effect, 'Will you describe the speed of the vehicle that left the Nettum yard as it entered the Christchana Township road and went east', and if permitted to testify, the witness would have testified that in answer to the question the speed was fast and faster than ordinary, and that the vehicle just popped out of the yard, and it is our contention, Your Honor that under the Miller vs. Larson case, 95 N.W.2d 569, since time is one of the issues involved in the lawsuit, the boy having to be at school at 8:45, and it being contended that he was late for school, and that under these circumstances the speed this distance from the accident, which was approximately between three quarters of a mile and a mile should be allowed in. That is our offer of proof, Your Honor." [Tr. 188, lines 5–23.]

The attorneys for the Nettums resisted the offer. The trial court denied the offer of proof. The trial court did not err in refusing to admit such testimony for two reasons: (1) the offer of proof was inadequate in that it failed to disclose any evidence of speed; and (2) the question of the admissibility of such evidence is within the discretion of the trial court where the witness was able to testify as to speed some distance from the scene of the accident, but was unable to testify as to the speed of the vehicle at the scene of the accident. This holding is enunciated in Miller v. Larson, 95 N.W.2d 569 (N.D. 1959); and followed in Gleson v. Thompson, 154 N.W.2d 780, 784 (N.D.1967), in which this court stated:

" * * * 'In an action for damages growing out of the collision of motor vehicles the admission in evidence of testimony as to the speed of one of them from a point about ⅛ mile from the scene of the accident to within 200 to 300 feet from the scene of the accident was within the discretion of the trial court." [¶ 16 of Syllabus.]

In reviewing the evidence in the instant case in light of Gleson v. Thompson, we do not believe that the trial court abused its discretion and therefore find no error in excluding the testimony of Stenseth with reference to the speed of the Galen Nettum vehicle.

The Thompsons further contend that there were other physical facts and testimony which were sufficient to create an issue for a jury, even though the presumption of due care was equally applicable to Beverly Thompson and Galen Nettum in the case at bar. The time of the accident is urged as being an important fact since Galen Nettum was driving to attend school, that he was late and, therefore, was speeding. Whether the accident occurred at the time set forth in the statement of facts would not be material because there is no evidence or additional proof of any correlation between the probability of Galen's being late for school and the speed at which he was operating the vehicle. The mere fact that he may have been late does not logically infer the conclusion that he was speeding. There is, very frankly, no evidence of the rate of speed of his vehicle just prior to the entry of his vehicle into the intersection or at the intersection. Thus, the time of the occurrence of the impact is not a material point and would not be a relevant fact as an issue for the jury.

■ The second contention urged by the Thompsons concerns the ruts which were created by the Nettum vehicle as it proceeded on the Christchana road after leaving the Hjelmer Nettum farm. Hjelmer Nettum testified that he left his farmyard prior to the time that Galen left for school; that Galen passed him a short distance east of the Nettum driveway; that Galen was proceeding at a speed of between 15 to 20 miles an hour; and that at the time that Galen passed him, his vehicle created ruts in the road from 2 to 3 inches deep. Hjelmer also testified to the effect that Galen did not have any lights burning on his vehicle, and that the car disappeared in the mist and the fog and that he, Hjelmer, did not see the accident. While there is testimony concerning the ruts imprinted in the Christchana road, which testimony is diametrically opposed to the testimony of Stenseth, this testimony concerning ruts more than half a mile west of the accident intersection would not be material, especially where there is no testimony concerning any ruts near or proximate to the intersection. The physical evidence of the ruts does not prove or disprove the rate of speed at which the vehicle operated by Galen Nettum was proceeding. Such evidence would not be of any value in assisting a jury in its deliberations. It would only tend to confuse the jury and become an invitation for speculation.

■ The Thompsons' third contention concerns Hjelmer Nettum's testimony that there were no lights burning on the Galen Nettum vehicle as it passed him. The

Thompsons assert there was no testimony whether the lights on the Thompson vehicle were on or off. The Thompsons conclude that such lack of testimony on their part is of value in determining whether Beverly Thompson would come within the purview of the presumption of due care and, with the testimony of Hjelmer Nettum, which is an admission by one of the defendants, that such evidence would create an additional fact issue for the jury to consider. Section 39–21–01, N.D.C.C., provides:

"Every vehicle upon a highway within this state at any time from a half-hour after sunset to a half-hour before sunrise and at any other time when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of five hundred feet ahead shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles."

However, Hjelmer Nettum did testify that he was able to see the intersection at a distance of approximately 300 feet, and no testimony was offered in opposition thereto. While there is some conflict in the testimony concerning the atmospheric conditions existing prior to the accident, there is no testimony conflicting with the statements of Hjelmer Nettum. In fact, Stenseth's testimony reveals that the visibility was much greater than 300 feet. Thus, after reviewing the testimony as to visibility and the meager testimony concerning the lights, we still are faced with an utter lack of evidence with reference to whether the lights were burning on either vehicle just prior to, at the time of, or immediately after the accident. Where the facts are so irrelevant, they would be of no material assistance to the jury other than to confuse it. Since we previously have discussed the presumption of due care and have concluded that such presumption is equated to both Beverly and Galen, the questionable atmospheric conditions at the scene of the accident and the conjectural burning of the lights, we believe, are not material and therefore could in no manner assist the jury in its deliberations.

Another contention asserted by the Thompsons is that the physical damage suffered by the two vehicles and the particular areas of the vehicles damaged are indices of speed, as well as aids in determining the point of impact; and, together with the testimony regarding the much greater distance traveled by the Nettum vehicle after impact than the Thompson vehicle, and the ruts caused by the Nettum vehicle after impact, created an issue for determination by the jury. Therefore, the Thompsons conclude that the inferences that can be drawn from these facts, together with the assertions previously urged, constitute a prima facie case. A perusal of the record, and particularly of the photographs which are in evidence concerning the damage incurred by the two vehicles, reveals that the Thompson vehicle struck the Nettum vehicle. The Nettum vehicle was damaged in an area extending from the right front fender to the centerpost separating the two right doors, while the Thompson vehicle suffered extensive damage to the entire front end. While it is conceded by all parties to the action that the collision happened in the intersection, again there is no evidence to indicate where, in the intersection, the impact occurred. There is testimony showing that the Nettum vehicle traveled a distance of 120 feet from the center of the intersection and the Thompson vehicle traveled a much lesser distance, or 44 feet, from the center of the intersection. However, the position of the two cars when they came to rest does not establish either the relative position of the vehicles before the accident or where the accident occurred in the intersection. While the photographs reveal extensive damage to each vehicle, we are unable to determine from the record in the instant case any direct evidence concerning the speed of the respective cars. Although the distances traveled after impact are normally indi-

cators of speed, in this case it is not logical to infer that one vehicle was traveling at a greater speed than the other, where the Thompson car broadsided the Nettum car and the force of the impact most probably could have caused the Nettum vehicle to travel the greater distance. Although the ruts which were in evidence in the plowed field to the northeast of the intersection could have been a factor, we do not believe that they are indicative of fault in this case because of the lack of evidence to support any theory that speed was one of the basic factors which created the ruts. Even with the right-of-way rule, if such facts had been submitted to a jury and had been interpreted in a light most favorable to the Thompsons, we do not believe that such facts would be sufficient, separately or combined, to justify a jury in awarding damages to the Thompsons. Hadland v. St. Mark's Evangelical Lutheran Church, 111 N.W.2d 775 (N.D.1961).

A further major assignment of error by the Thompsons is that Galen Nettum violated the statutory right-of-way rule by failing to yield the right of way to Beverly Thompson, who was approaching the intersection from his right. The right-of-way rule in North Dakota, that is, Section 39–10–22(2), N.D.C.C., states:

> "2. When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right;"

A violation of right of way is a determination to be made upon the facts adduced during the course of a trial of an action and is not a fact in and of itself. Thus Mrs. Thompson, in order to avail herself of the right-of-way rule, was required to prove sufficient facts to bring herself within that rule; that is, to cloak herself with the "right of way". The reasons stated earlier in the opinion concerning the inferences of speed, that is, the photographs, the ruts, the final positions of the vehicles after impact, together with a review of the record,

fail to indicate any direct evidence or sufficient circumstantial evidence as to speed, lookout, position of the vehicles, and point of impact which supports an allegation of violation of the right-of-way rule. The mere fact that Mrs. Thompson approached the intersection from the right of Galen Nettum was insufficient in itself to place her within the provisions of the statutory right-of-way rule. This right of precedence is not absolute. As stated in paragraph 1 of the syllabus in Pederson v. O'Rourke, 54 N.D. 428, 209 N.W. 798 (1926):

> "1. The right of precedence under a city ordinance giving right of way at street intersections to the vehicle approaching from the right is not absolute. It must be exercised consistently with the safety and convenience of others, and arises only as against those vehicles approaching from the left which, all having due regard to other rules of the road, will not first pass over the intersection."

The open rural intersection cases of Johnson v. Sebens, 86 N.W.2d 386 (N.D.1957) and Knudsen v. Arendt, 79 N.D. 316, 56 N.W. 2d 340 (1952) are distinguishable from the instant case. In the *Johnson* case there were eyewitnesses to the accident and neither the *Johnson* case nor the *Knudsen* case involved a misty or befogged intersection. The contentions of the Thompsons are without merit in light of the total lack of evidence to establish the statutory right-of-way rule on behalf of Mrs. Thompson and against Galen Nettum, who was approaching from the left. To permit a jury to determine from the direction of travel whether one driver or the other violated the right-of-way rule would, in effect, be allowing the jury to conclude that since an accident occurred, one or the other of the two parties involved must of necessity be negligent. Such action on the part of the jury would be highly speculative and conjectural. The Thompsons impliedly assert that a prima facie case was proved, and therefore there was an issue of fact for the jury. While this court has held numerous times that questions of

negligence and contributory negligence are issues for the jury, yet where there has been a failure to prove any actionable negligence on the part of Galen Nettum, the Thompsons' actions must of necessity fail. This court in Holcomb v. Striebel, 133 N.W.2d 435 (N.D.1965), stated:

" * * * Where proof of an issue of fact depends upon circumstantial evidence 'The circumstances must, * * * agree with and support the hypothesis which they are adduced to prove; but circumstantial evidence is not sufficient to establish a conclusion where the circumstances are merely consistent with such conclusion, or where the circumstances give equal support to inconsistent conclusions, or are equally consistent with contradictory hypotheses.' 32A C.J.S. Evidence § 1039, p. 755."

■ The Thompsons further urge that Mrs. Thompson had a right to rely upon the presumption that Galen Nettum would obey the law, Section 31–11–03(32), N.D.C.C., including the rules of the road with respect to directional right of way. The argument is asserted in an attempt to nullify the defense of contributory negligence. Umland v. Frendberg, 63 N.W.2d 295 (N.D. 1954). The presumption of due care applicable to both amnesic parties also includes the presumption that both parties are obeying the law. The substance of the Thompsons' argument is to the effect that if Galen Nettum had obeyed the law he would have yielded the right of way to Mrs. Thompson. This contention is based upon the erroneous assumption that Mrs. Thompson did have the right of way. We concluded in our prior discussion that the Thompsons' proof was insufficient to place Beverly within the protection of the right-of-way rule. It is not sufficient to have the right of way nor to rely upon the presumption that everyone will obey the rules of the road. Even if a driver has

the right of way, he may not fully disregard other cars on the highway. The driver of an automobile must pay attention to the traffic and to the situation existing at the particular time where, as in this case, there was fog and light rain, both of which might cause a dangerous situation for the operator of a vehicle. It is his duty to take every reasonable precaution to avoid a collision with another automobile even if such automobile is violating the rules of the road. Again, the record does not reveal any proof to support the contentions of the Thompsons.

■ There is an important distinction between a prima facie case and an alleged violation of the statutory right-of-way rule, the speculative testimony of Stenseth as to speed, and the presumptions of due care and obeying the law from amnesia arising from injuries suffered by both Beverly Thompson and Galen Nettum. A prima facie case envisions a much greater quantum of evidence than could be allotted to any of the inferences which can be drawn from the facts in the case at bar. The conflict in this case does not lie in the evidence but in the varying inferences which may be gathered from the very meager facts involved here. To allow or permit presumptions alone to be submitted to the jury where the defendant had similar presumptions, together with no other evidence of negligence, would negate a prime precept of negligence law; that is, negligence will not be presumed; it must be proved. Since Mrs. Thompson was unable to prove a prima facie case against Galen Nettum, the court did not err in dismissing the Howard Thompson action. Hillius v. Wagner, 152 N.W.2d 468 (N.D.1967).

The judgments appealed from are affirmed.

TEIGEN, C. J., and STRUTZ, ERICKSTAD and KNUDSON, JJ., concur.